[Cite as *Kellam v. Bakewell*, 2014-Ohio-4635.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| James R. Kellam | Court of Appeals No. E-13-032 |
| Appellant | Trial Court No. 2009-DR-100 |
| v. | |
| Mary C. Bakewell | **DECISION AND JUDGMENT** |
| Appellee | Decided: October 17, 2014 |

* * * * *

Michael W. Sandwisch, for appellant.

David Arnold, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This matter is before the court on an appeal from a judgment of the Erie County Court of Common Pleas granting a divorce between appellant, James Kellam, and appellee, Mary Bakewell.  Appellant assigns as error the court's division of marital assets and award of attorney fees.  For the following reasons, we affirm.

**{¶ 2}** Appellant and appellee were married on May 22, 1982. They had no children together. On June 28, 2007, the parties separated. It is undisputed that from that date, the parties maintained separate residences, did not engage in sexual relations with one another, and did not attend social functions together. The parties never reconciled.

**{¶ 3}** Appellant was an attorney, in practice for over 40 years, most recently specializing in the area of Social Security Disability. During the course of the proceedings, appellant ceased working at his solely-owned law firm, and entered into a two-year "of counsel" agreement with another firm. Appellee was self-employed, infrequently engaged in the act of liquidating businesses. Appellee testified that she eventually worked herself out of an occupation. During the course of the separation, and while the parties were working towards an amicable resolution, appellant voluntarily paid $3,200 per month to appellee for her bills and expenses. In addition, appellant agreed to pay $742.28 per month for a new vehicle for appellee, and agreed to continue providing medical insurance for her under his plan at a cost of $530.93 per month.

**{¶ 4}** The parties were unable to resolve their differences regarding the separation, and on June 15, 2009, appellant filed for divorce. Following extensive discovery, the matter proceeded to a hearing before a magistrate over the course of four days in December 2010. On the first day, the parties worked to settle the matter, but were unsuccessful. However, they did agree to a number of stipulations regarding certain assets. Those stipulations were read into the record. Over the remaining three days,

2.

testimony was elicited from appellant and his accountant, and from appellee, appellee's prior and current attorneys regarding their fees, and appellee's expert witness regarding the valuation of appellant's law firm.

{¶ 5} At the end of the hearing, the parties agreed to submit written closing arguments. Prior to the closing arguments being filed, a dispute arose regarding the extent of the stipulations, which required the magistrate to hold another hearing and ultimately issue an order setting forth the agreed stipulations. Consequently, the closing arguments were not filed until May 20, 2011.

{¶ 6} On September 19, 2011, the magistrate issued his decision. Relevant here, the magistrate found that the period considered "during the marriage" for purposes of the division of property included up to the final hearing on the divorce, which was held on December 2, 2010. In so finding, the magistrate rejected appellant's argument that the "de facto" date of the termination of the marriage was June 28, 2007, when the parties separated. Thus, the magistrate included in his division of marital property events that occurred after June 28, 2007, but before December 2, 2010.

{¶ 7} In his decision, the magistrate effected a division of the marital residence, appellant's law firm, appellant's profit sharing account, several brokerage accounts and certificates of deposit, the parties' vehicles, and miscellaneous personal property including paintings and furniture. The magistrate found that the division, while not precisely equal, was nonetheless equitable, and that the difference in value between the

3.

parties' respective shares was less than one percent of the total value of the marital estate. In addition to the property division, the magistrate determined that appellant must pay $4,000 a month in spousal support to appellee, not including appellee's medical insurance premium and the cost of her new car. The magistrate did not set an end date for the spousal support, noting that the matter should be reviewed after appellant's planned retirement at the end of 2011. Finally, the magistrate determined that appellant should pay $14,125 of appellee's attorney and expert witness fees, which would be deducted from appellant's share of the marital assets.

{¶ 8} Appellant timely filed objections to the magistrate's decision, contesting, inter alia, the date of the termination of the marriage, the value ascribed to his law firm, the value of certain marital and pre-marital assets, and the award of spousal support and attorney fees. While the objections were pending, appellant, in fact, did retire at the end of 2011. As a result, the matter was referred back to the magistrate for further consideration of the spousal support award. Following a hearing on July 19, 2012, the magistrate issued his amended decision on December 4, 2012, in which he reduced the amount of spousal support to $450 per month retroactive to January 1, 2012. Thereafter, appellant renewed his objections to the magistrate's amended decision.

{¶ 9} On April 24, 2013, the trial court issued its decision overruling appellant's objections and adopting the magistrate's decision. Appellant has timely appealed the trial court's judgment to this court.

4.

{¶ 10} Appellant asserts four assignments of error on appeal:

**Assignments of Error**

1.  The Trial Court erred to the prejudice of the Plaintiff-Appellant in failing to determine that there was a "de facto" termination of the parties' marriage on June 28, 2007, which had a significant impact on the equitable distribution of marital assets and debts.

2.  The Trial Court erred to the prejudice of the Plaintiff-Appellant in valuing Plaintiff-Appellant's law practice based on the admissible evidence before the Court, the laws of Ohio, and by utilizing Plaintiff's same income twice to determine both spousal support and the value of the law practice, and in failing to value the law practice as of the "de facto" termination date of June 28, 2007.

3.  The Trial Court erred to the prejudice of the Plaintiff-Appellant in not equitably distributing the marital assets and debts of the parties based on the proper value of the assets based on admissible evidence, the proper determination of what assets were marital and non-marital, as well as the proper date of valuation, and the failure to include all of the marital debt, as well as the marital assets.

4.  The Trial Court erred to the prejudice of the Plaintiff-Appellant in ordering Plaintiff-Appellant to pay the attorney fees incurred by the

Defendant-Appellee in the divorce action based on the admissible evidence, the weight of the evidence, and the laws of Ohio.

## Division of Marital Property

{¶ 11} In his first, second, and third assignments of error, appellant argues that the trial court erred in dividing the marital property.

{¶ 12} We begin by noting that trial courts are given broad discretion in determining property division, and their decisions will not be reversed but for an abuse of that discretion. *Koegel v. Koegel*, 69 Ohio St.2d 355, 357, 432 N.E.2d 206 (1982). An abuse of discretion connotes that the trial court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In a divorce proceeding, a trial court shall divide the marital property equitably between the spouses in accordance with the provisions in R.C. 3105.171. R.C. 3105.171(B) and (C)(1). Marital property, generally, is all real and personal property, including the retirement benefits of the spouses, that was acquired by either or both of the spouses "during the marriage." R.C. 3105.171(A)(3)(a)(i).

{¶ 14} In his first assignment of error, appellant contends that the trial court erred in finding that events that occurred following the parties separation on June 28, 2007, but before December 2, 2010, took place "during the marriage." R.C. 3105.171(A)(2)(a) defines "during the marriage" as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal

6.

separation." However, "If the court determines that the use of either or both of [those] dates * * * would be inequitable, the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(b).

{¶ 15} Appellant argues that the marriage effectively ended on June 28, 2007, because on that date the parties ceased residing together, no longer appeared together socially, maintained separate financial arrangements, and made a decision that the marriage was irreparably broken. Notably, the determination of the duration of the marriage has significant financial implications for appellant as he made contributions to his profit sharing plan in September 2007, 2008, 2009, and 2010, totaling approximately $150,000, that he contends would be his separate property if the marriage ended on June 28, 2007.

{¶ 16} In response to appellant's argument, the trial court found that although the parties had physically and emotionally separated on June 28, 2007, appellee was still financially reliant on appellant as evidenced by appellant's payment of her car loan and medical insurance premiums, and his monthly payment of $3,200 for her bills and expenses. The court further found that appellant did not present sufficient evidence to demonstrate that using the statutory date of the final hearing in the divorce action was inequitable. Thus, the court concluded that the proper end date of the marriage was December 2, 2010, the date of the final hearing. In light of the circumstances of the parties, including the uncontested evidence that appellee was financially reliant on

7.

appellant following the separation, we cannot say that the trial court's decision to apply the statutory date was an abuse of discretion.

{¶ 17} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 18} In his second assignment of error, appellant raises two issues. First, he argues that the trial court erred in determining the value of his law firm. Second, he argues that the trial court erred by effectively "double dipping" when it applied the value of the law firm in the division of marital property and utilized the same value in the determination of spousal support.

{¶ 19} Regarding the first issue of the value of the law firm, appellant relies on his own testimony that, despite diligent efforts, he was unable to find an interested buyer for his firm to demonstrate that the firm has no appreciable value. In addition, appellant's accountant testified that in his experience of winding down legal practices, the practices are sold based on the value of fixed assets. Here, appellant testified that his law firm had only a few thousand dollars in fixed assets such as furniture. Notably, appellant and his accountant did not base their valuation of the firm on the "of counsel" agreement because appellant's accountant viewed the agreement as merely akin to an employment agreement.

{¶ 20} In contrast, appellee's expert witness testified that the "of counsel" agreement was a sale of the practice. Further, the witness concluded that the value of appellant's law firm was $336,771. She reached this conclusion by examining the "of counsel" agreement and the amount that appellant was to receive under it, and by

8.

applying historical social security disability success rates to the number of clients that were transferred under the agreement.

{¶ 21} In considering this issue, the trial court found the testimony of appellee's expert witness to be persuasive. Further, the court found that appellant's accountant did not provide an expert opinion as to the valuation, and was not in an objective position to testify such that no substantial weight should be given to his testimony. Thus, the trial court ascribed the value of $336,771 to appellant's law firm.

{¶ 22} We note that "[t]he trial court is in the best position to evaluate evidence and assess the credibility of witnesses." *Harris v. Harris*, 6th Dist. Lucas No. L-02-1369, 2004-Ohio-683, ¶ 20; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Here, appellee's expert witness testified to a specific valuation, and described her methodology used to reach that amount. We do not find that the trial court abused its discretion in relying on this testimony to establish the value of the firm at $336,771. Therefore, appellant's first argument is without merit.

{¶ 23} In his second argument, appellant relies on *Heller v. Heller*, 10th Dist. Franklin No. 07AP-871, 2008-Ohio-3296, for the proposition that the trial court erred when it used the same income to both value his law firm and determine his spousal support obligation. In *Heller*, the husband owned an interest in the future profits of a company. As part of the equitable division of marital assets, the trial court determined the present value of the husband's interest by capitalizing the future profits, and awarded half of that value to the wife. In addition, the trial court ordered that the wife should

9.

receive as spousal support an additional twenty percent of the future profits of the company actually realized by the husband. The Tenth District, however, held that such an award was an abuse of discretion because the trial court "'double dipped,' or awarded part of the same asset to [the wife] twice." *Id.* at ¶ 23.

{¶ 24} We find *Heller* to be distinguishable. In that case, the same asset was both counted in the marital division and required to be paid as part of the spousal support award. Here, in contrast, the value of the law firm was determined in the marital division, but the spousal support award was based on appellant's income in general. Under R.C. 3105.18(C)(1), in determining the amount of spousal support, the court shall consider "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code." Therefore, we hold that the trial court did not abuse its discretion when it determined spousal support based on appellant's income that he received as part of the "of counsel" agreement. *See Kline v. Kline*, 8th Dist. Cuyahoga No. 96734, 2012-Ohio-479 (trial court did not impermissibly double dip when it considered husband's pension funds for purposes of the marital division, and also considered husband's pension payments when determining spousal support).

{¶ 25} Accordingly, appellant's second assignment of error is not well-taken.

{¶ 26} As his third assignment of error, appellant challenges the division of the marital assets. The majority of appellant's arguments concern contributions to accounts that were made after June 28, 2007. Appellant argues that those contributions should be

10.

separate property because they occurred after the "de facto" date of divorce. However, we have already determined above that the trial court did not abuse its discretion in defining the period "during the marriage" to include up to December 2, 2010. Thus, appellant's arguments in this vein are without merit.

{¶ 27} Additionally, appellant challenges the trial court's failure to award him the appreciation on his separate property in the profit sharing account. On September 30, 1981, prior to the parties' marriage, the profit sharing account had a balance of $24,832.32. The value of the profit sharing account available for equitable division at the time of the divorce was $656,663. Appellant argues that in addition to his initial contribution of approximately $25,000, he is entitled to a reasonable rate of return of six percent per annum on that amount, for a total of approximately $93,000.

{¶ 28} R.C. 3105.171(A)(6)(a)(iii) provides that separate property includes "Passive income and appreciation acquired from separate property by one spouse during the marriage." "It is well-established that a party requesting that an asset be classified as separate property bears the burden of tracing that asset to his or her separate property." *Duffy v. Duffy*, 6th Dist. Wood No. WD-11-019, 2012-Ohio-2808, ¶ 14, citing *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, ¶ 20 (10th Dist.). "[A] party who fails to provide adequate evidence as to the amount of passive appreciation fails to meet his burden of tracing the appreciation as separate property." *Bizjak v. Bizjak*, 11th Dist. Lake No. 2004-L-083, 2005-Ohio-7047, ¶ 12. Here, the trial court found that appellant provided no evidence as to the amount of appreciation

11.

attributable to his initial contribution. Therefore, we hold that the trial court did not abuse its discretion when it declined to speculate and apply an arbitrary rate of return, instead awarding only appellant's initial contribution as his separate property.

{¶ 29} Accordingly, appellant's third assignment of error is without merit.

### Attorney and Expert Witness Fees

{¶ 30} Finally, in his fourth assignment of error, appellant argues that the trial court erred in awarding $14,125 to appellee for attorney and expert witness fees.

{¶ 31} We review awards of attorney fees in domestic relations actions pursuant to R.C. 3105.73 under an abuse of discretion standard. *Newcomer v. Newcomer*, 6th Dist. Lucas No. L-11-1183, 2013-Ohio-5627, ¶ 87. R.C. 3105.73(A) provides,

> In an action for divorce, dissolution, legal separation, or annulment
>
> of marriage or an appeal of that action, a court may award all or part of
>
> reasonable attorney's fees and litigation expenses to either party if the court
>
> finds the award equitable. In determining whether an award is equitable,
>
> the court may consider the parties' marital assets and income, any award of
>
> temporary spousal support, the conduct of the parties, and any other
>
> relevant factors the court deems appropriate.

{¶ 32} Here, appellant argues that a fee award was inappropriate because appellee had significant marital assets awarded to her, received significant temporary and post-divorce spousal support, and received a distribution of cash during the proceedings, by agreement of the parties, so that she could have funds to pay legal fees. Furthermore,

12.

appellant states that appellee had filed a disciplinary complaint against one of her attorneys, and it is unclear whether appellee will pay that attorney, making the award of attorney fees a potential windfall.

{¶ 33} In addressing this issue, the trial court found that appellee had accumulated approximately $36,000 in outstanding attorney fees and $8,000 in outstanding expert witness fees, and that appellant had paid approximately $20,000 of his own attorney fees, presumably from marital income and assets. The trial court then considered the parties' assets, the division of the marital property, and appellant's payment of spousal support. Additionally, the trial court recognized that appellant had not acted in a manner that would cause appellee or her attorneys to expend any unnecessary time. Under these circumstances, the trial court concluded that it was equitable that appellant pay $10,000 towards appellee's reasonable attorney fees, and $4,125 towards the expert witness fee. We find nothing in the trial court's decision that indicates an abuse of discretion in reaching that conclusion.

{¶ 34} Accordingly, appellant's fourth assignment of error is not well-taken.

{¶ 35} On consideration whereof, we find that substantial justice has been done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                 _____

Arlene Singer, J.                         JUDGE

                                          _____

Stephen A. Yarbrough, P.J.        JUDGE
CONCUR.

                                          _____

                                             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.