[Cite as *Hosang v. Hosang*, 2019-Ohio-54.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Jeffrey A. Hosang

Court of Appeals No. H-17-013

    Appellant/Cross-Appellee

Trial Court No. DR 2014 0163

v.

Constance A. Hosang, et al.

**DECISION AND JUDGMENT**

    Appellee/Cross-Appellant

Decided: January 11, 2019

* * * * *

Thomas M. Dusza, for appellant/cross-appellee.

John D. Allton, for appellee/cross-appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This appeal and cross-appeal is from the Huron County Court of Common Pleas' August 29, 2017 judgment entry denying the objections of plaintiff-appellant/cross-appellee, Jeffrey A. Hosang, and defendant-appellee/cross-appellant, Constance A. Hosang[1]. For the reasons that follow, we affirm.

---

[1]On July 3, 2018, we stayed this matter pending appellant's bankruptcy proceedings. Those proceedings are now complete and the bankruptcy stay has been lifted.

{¶ 2} The parties were married in February 1995, and had four surviving children together at the time of the divorce. Throughout their marriage, appellant owned and operated TJ Hosang Construction Company, a home construction and remodeling business. Appellee worked for the company as an office manager and bookkeeper. The parties also owned several parcels of real property, including the marital residence and adjoining parcels which were secured by various mortgages.

{¶ 3} This case commenced on March 5, 2014, with appellant's complaint for divorce with minor children.[2] Appellee filed a counterclaim for divorce on March 31, 2014.

{¶ 4} The matter ultimately proceeded to a hearing on the division of the marital property. The parties presented expert testimony regarding the valuation of the real property. Appellant's expert, Jack Erne, testified that he is a certified appraiser. Erne testified regarding the pre-site and onsite visit work entailed in valuing residential and vacant properties. Erne also discussed the need to assess comparables based on the size, location, and use of the properties. Erne then testified regarding the documents he prepared in assigning values to the three categories of properties. First, as to the residential property, Erne valued the home and land at $189,000. Next, as to the five farmland parcels, Erne noted that he valued the property for farm-use only based on the high costs required to convert the land for residential use. Erne valued the property at

[2] Issues regarding custody, support, and visitation of the minor children (three at the time of the divorce) were settled between the parties and is not before the court on appeal.

$3,500 per acre or $42,200 collectively. Finally, Erne valued the properties containing horse stables at $98,000 (the parcel with the stables at $94,000, and two adjoining parcels at $2,000 each).

{¶ 5} Appellee presented the valuation testimony of real estate broker David Amarante. Amarante testified that he helps clients buy and sell real estate and does property valuations or broker price opinions ("BPO"). Amarante explained that a BPO is not a "full-blown" appraisal but does involve touring the properties, analyzing MLS/auditor data, and using the comparable sales method. As to the marital home, Amarante assigned it a value of $180,000. Amarante further stated that he valued the 10-acre parcel as one piece of property instead of five parcels. He placed the value at $100,000 and indicated that a few houses could be built on it. Amarante agreed that there was a slight slope down from the road but stated that the rest of the property was "pretty flat." Finally, Amarante valued the horse stables parcel and two adjacent parcels as one piece of property and assigned it the value of $150,000.

{¶ 6} Appellee testified that appellant lost approximately $200,000 gambling over the course of their marriage. Appellee stated that both lines of credit were incurred due to appellant's gambling debts. Appellant disputed this assertion and testified that the $80,000 debt was due to a spec house that they lost money on which coincided with the economic decline in 2006-2007. He stated that they lost approximately $60,000 on the deal. Appellant did admit that when he gambled it ranged from a couple hundred dollars to $1,000 on a given weekend. Appellant stated that the family was aware of the

3.

gambling but that he hid the extent of his losses from appellee. Appellant also acknowledged that in a letter to appellee he expressed that his losing cost them dearly. Appellant stated that he stopped gambling on his own six to eight years prior and denied having an addiction.

{¶ 7} Regarding the 2012 Cadillac SRX, appellant testified that he purchased the vehicle in the summer of 2014, and was the responsible party. On the date of the hearing the vehicle was valued at $23,379 and had a loan balance of $20,000. Appellant stated that it was purchased after the temporary orders were received in the case.

{¶ 8} The magistrate issued his decision on February 24, 2017. Disputed in this appeal, as to the parties' real property the magistrate found that the marital residence had a value of $189,000 and that the property with the horse stables had a value of $96,000. The magistrate then noted that the parcels were subject to a mortgage and a note with a balance of $213,610. The court then determined that $71,390 was available for equitable distribution. As to the five parcels of property located across the street from the marital home, the magistrate valued the parcels at $42,200 but that because the parcels are security for a loan and a line of credit with a balance of $106,840, the value for distribution was zero.

{¶ 9} The magistrate divided the five motor vehicles owed by the parties. Specifically, as to the Cadillac SRX, the magistrate found that the vehicle was marital property and that $3,379 was available for equitable distribution. Finally, the magistrate determined that the unpaid debt of T.J. Hosang Construction, Inc., $27,212.10 on the line

4.

of credit, was not proven by appellant to be incurred by actual business expenses "rather than, say, a cover for substantial gambling losses, as attested to by Defendant/Wife." The magistrate then indicated that the value of the business would not be reduced by the balance due and owing. The magistrate ultimately found that appellant owed appellee the sum of $52,384.72 to equalize the property distribution.

{¶ 10} On June 15, 2017, appellant filed three objections to the magistrate's decision. First, appellant argued that the magistrate failed to factor the "negative equity" of the real estate; specifically, the fact that the value of the ten acres of farmland, $42,200, was substantially less than the $106,840 owed on the mortgage. Appellant also disputed the magistrate's classification of the Cadillac as marital property and the magistrate's failure to assign all the marital debt to the parties based upon his belief that appellant's gambling debt was responsible for a significant portion of the parties' debt.

{¶ 11} On June 26, 2017, appellee filed an objection to the valuation of the 10 acres of farmland. Appellee argued that appellant's expert's testimony was incompetent because he valued the ten-acre parcel as five distinct parcels though two of the parcels were landlocked, thereby reducing its overall value.

{¶ 12} After an independent review of the record, the trial court overruled both parties' objections and adopted the magistrate's decision. This appeal followed. Appellant/cross-appellee raises the following three assignments of error:

5.

I. The trial court erred in the property division of the parties by not factoring in the negative equity in the marital real estate owned by the parties.

II. The trial court erred in the property division of the parties by not accounting for all marital debt of the parties without any specific finding of financial misconduct.

III. The trial court erred in the property division of the parties by including into the division of marital assets the 2012 Cadillac vehicle.

{¶ 13} Appellee/cross-appellant's assignment of error provides:

The trial court erred in the valuation it placed on the 10 acre parcel referred to in appellant's brief as "farmland."

{¶ 14} We initially note that an appellate court may not reverse a trial court's property allocation or valuation decisions absent a showing of an abuse of discretion. *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981); *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). In determining whether the trial court abused its discretion, a reviewing court cannot examine the valuation and division of a particular marital asset or liability in isolation. *Briganti v. Briganti*, 9 Ohio St.3d 220, 221-222, 459 N.E.2d 896 (1984). Instead, the reviewing court must view the property division in its entirety. *Id.* at 222. The trial court's valuation, however, must be supported by the evidence. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998).

6.

**{¶ 15}** We will simultaneously address appellant's first assignment of error and appellee's cross-assignment of error. Appellant argues that the trial court erroneously failed to offset the negative equity in the ten-acre parcel when dividing the parties' marital assets and debts. We agree that negative equity in marital property can be used as an offset. As with all marital property division, whether to award a party negative equity is within the trial court's discretion. *Iacampo v. Oliver-Iacampo*, 11th Dist. Geauga No. 2011-G-3026, 2012-Ohio-1790, ¶ 76, citing *Tokar v. Tokar*, 8th Dist. Cuyahoga No. 89522, 2008-Ohio-6467, ¶ 18.

**{¶ 16}** Regarding the property at issue, at the August 28, 2015 hearing appellant testified that a loan balance of $213,609.53 was for the residence and adjacent land which included the horse stables. These properties were also used to operate his business. Appellant further stated that a $25,915 balance represented a line of credit secured by the properties. A balance of $80,924 was for the mortgage on the lots on S.R. 113 and another property that the parties had owned but lost a "considerable amount" of money on upon its sale. Appellant was not certain because the parties "had a bunch of loans" and their banker "consolidated different ones into different things * * *."

**{¶ 17}** Appellee testified that the parties' original mortgage was paid in full and that they took out a second mortgage when they purchased the ten-acre parcel across the street and lost money on the spec home. Appellee stated that the balance was around $220,000. Appellee further testified that there was an additional mortgage on the stables

7.

of about $80,000. Appellee testified that some of the bank indebtedness resulted from appellant's gambling losses.

{¶ 18} As set forth above and in dispute, the magistrate valued the S.R. 113 parcels, five parcels totaling approximately ten acres, at $42,200. Appellant stated that they spent $112,500 for the parcels and that they "severely overpaid" in order to keep development from occurring across from their residence. However, appellant testified that it would be very costly to build on the property because it is "severely sloped" and lacked proper drainage. Appellant explained that although he did not believe the development rumor, they still purchased the lots "[t]o keep it from being turned into anything other than farmland." Appellant did agree that five home lots, with a deep set-back could be put on the property and that $9,000 was deducted from the purchase price to allow for a drainage ditch to be installed along the back.

{¶ 19} Appellee claimed that the parties spent $120,000 for the parcels and that the slope appellant testified about was only "slight." Also as set forth above, the parties' respective experts gave widely divergent estimates of value and the court found appellant's expert to be credible. However, the fact that the court did not award appellant negative equity was not an abuse of discretion. First, appellant testified that although he did not feel they were buildable, he purchased the parcels to prevent development across from his residence. Appellant was willing to "severely" overpay for this benefit. Next, appellant is retaining the properties across from the disputed parcels so he will continue to benefit from the purchase. Finally, absent any real evidence regarding the feasibility

8.

of the development of the lots, we reject appellee's argument in her assignment of error that the parcels should have been collectively valued at $100,000 as testified to by her expert.

{¶ 20} Appellant's first assignment of error is not well-taken. Appellee's cross-assignment of error is not well-taken.

{¶ 21} Appellant's second assignment of error asserts that the trial court erred by disregarding the marital debt of the business without a specific finding of financial misconduct. Appellee counters that it was within the court's province, as the assessor of the parties' credibility, to reject appellant's proffer relating to the business expenses.

{¶ 22} Specifically, the magistrate first noted that the parties failed to obtain an expert opinion as to the value of TJ Hosang Construction, Inc. and that, despite the "dubious credibility" of the parties in "most aspects" of the case the business value would be placed at $34,000, with $26,576.43 available for distribution. As to the debts of the business, the magistrate noted a business line of credit with $27,212.10 was due and owing. The magistrate concluded, however, that:

> Plaintiff has produced no documentation to support that these borrowed funds were used for actual business expenses, rather than, say, a cover for substantial gambling losses, as attested to by Defendant/Wife. The Magistrate therefore finds that the value of the business should not be diminished by the balance alleged to be due and owing on the line of credit.

9.

{¶ 23} Reviewing the testimony of the parties, we cannot say that the court abused its discretion when it adopted the magistrate's decision as to the value of the business. The testimony of the parties regarding the value was divergent and there was no expert testimony regarding the valuation. Appellant's second assignment of error is not well-taken.

{¶ 24} Appellant's third and final assignment or error disputes the trial court's classification of the equity in appellant's 2012 Cadillac SRX as a marital asset subject to division. Appellant argues that the purchase of the vehicle was made following the parties' separation and his filing of the complaint for divorce. Appellee counters that the trial court determined the duration of the marriage for property division purposes to include the purchase date of the vehicle.

{¶ 25} In a divorce proceeding, property acquired during the marriage and held by a spouse is presumed to be marital property. R.C. 3105.171(A)(3)(a)(i). "During the marriage" generally means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2). The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168 (10th Dist.), ¶ 20, citing *Osting v. Osting*, 3d Dist. Allen No. 1-03-88, 2004-Ohio-4159.

{¶ 26} An appellate court reviews the trial court's factual determination of whether property is marital or separate property based on a manifest weight of the

10.

evidence standard. *Carpenter v. Carpenter*, 6th Dist. Wood No. WD-01-028, 2002 Ohio App. LEXIS 469, *5 (Feb. 8, 2002), citing *Kelly v. Kelly*, 111 Ohio App.3d 641, 642, 676 N.E.2d 1210 (1st Dist.1996). Accordingly, the judgment of the trial court will not be disturbed on appeal if supported by some competent, credible evidence. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 468, 628 N.E.2d 1343 (1994).

{¶ 27} Appellant testified that he purchased the vehicle in the summer of 2014; the divorce action was filed in March 2014. Appellant testified that he purchased the Cadillac post-separation and after the temporary orders were received in the case. Appellant stated that the value of the vehicle was $23,379, and that he owed approximately $20,000 on the loan. Appellant stated that he wished to retain the vehicle.

{¶ 28} Arguing that the Cadillac is his separate property, appellant relies on an Eighth Appellate District case which concluded that credit card debt incurred by one spouse following the divorce filing was not marital debt. *Rossi v. Rossi*, 8th Dist. Cuyahoga Nos. 100133, 100144, 2014-Ohio-1832. In *Rossi*, the court found that the trial court improperly classified post-filing credit card debt as marital property. *Id.* at ¶ 65. So finding, the court noted that the debts were not incurred for the "joint benefit of the parties;" rather, they were incurred solely for the benefit of the respective parties. *Id.* Further, testimony was presented the credit cards were used exclusively by each party and for their living expenses and that "[n]either party claimed that any of their credit card account balances were attributable to marital expenses pre-dating the parties' separation or for a joint marital purpose." *Id.*

11.

**{¶ 29}** In the present matter, at the August 28, 2015 hearing, appellant testified that he purchased the Cadillac SRX in the summer of 2014, following the parties' separation and the issuance of the court's temporary orders and that its value was $23,379, based on Kelley Blue Book pricing. Appellant stated that he signed the loan for the vehicle and that approximately $20,000 was due and owing. Appellant did not, however, testify as to the purchase price of the vehicle, any amount that was put down, or from where the payment funds originated. Ultimately, whether certain property is properly characterized as separate does not turn on when it was purchased; rather, whether any of the funds used were marital. Accordingly, we cannot say that the court erred by affirming the magistrate's classification of the vehicle as marital. Appellant's third assignment of error is not well-taken.

**{¶ 30}** On consideration whereof, we find that substantial justice was done the parties complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. The parties are ordered to equally share the costs of this action.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

12.

Mark L. Pietrykowski, J.              _____
                                                         JUDGE

Thomas J. Osowik, J.

                                             _____
James D. Jensen, J.                                   JUDGE
CONCUR.

                                             _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.