[Cite as *K.L.B. v. M.T.B.*, 2025-Ohio-2445.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| K.L.B., | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 114029 |
| | : | |
| v. | | |
| | : | |
| M.T.B., | | |
| | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** July 10, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-377095

---

### *Appearances:*

Rosenthal | Lane, L.L.C., Scott S. Rosenthal, and Alarra
S. Jordan, *for appellee/cross-appellant*.

Bartos & Company, LPA, and Timothy G. Spackman, *for
appellant/cross-appellee*.

SEAN C. GALLAGHER, J.:

{¶ 1} M.T.B. ("Michael") appeals the final judgment entry of divorce, which in pertinent part divided his and K.L.B.'s ("Kristy") assets in a roughly even distribution. In a cross-appeal, Kristy challenges the amount and duration of the spousal-support award, the lack of a life-insurance security on the division of property award, and the denial of her request for attorney fees. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

{¶ 2} The parties were married in 2005 and have two teenage children. This was Michael's third marriage. They separated in 2019, and Kristy initiated divorce proceedings. Michael is in his 70s and has some health problems. He is a medical doctor specializing in urology and had ownership interests in several medical businesses at the time of trial. Kristy is in her late 40s. Kristy raised their children and generally supported the family in a non-earning capacity.

{¶ 3} At trial, before the domestic relations court's magistrate, both parties presented evidence of the value of the marital assets. The specifics of the valuations will be discussed later, where relevant to this appeal. The court, over objections, adopted the magistrate decision disposing of all issues and entered the final judgment entry of divorce. In that entry, as is relevant to this appeal, the court declined to award Kristy her attorney fees, awarded her $4,000 a month for spousal support for one year, and allocated each party their respective life insurance policy. This timely appeal and cross-appeal followed.

{¶ 4} In Michael's appeal, he advances three assignments of error claiming (1) that the domestic relations court erred in determining the market values of his interests in several businesses; (2) that the division of property was not equitably achieved; and (3) that the court abused its discretion in refusing to "reopen" trial for the purposes of considering additional testimony and evidence after objections to the magistrate decision were filed. In Kristy's cross-appeal, she claims the court erred (1) in determining the amount and duration of spousal support; (2) by not requiring Michael to secure his support and property division with a life insurance policy or accruing interest; and (3) by failing to award her attorney fees. Each argument will be addressed in the order presented but combined where appropriate.

{¶ 5} Generally, "[w]hen reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard is used." *Taylor v. Taylor*, 2018-Ohio-2530, ¶ 5 (10th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). This standard applies to issues such as "orders relating to alimony; the division of marital property; child custody; and child support." (Citations omitted.) *Id.* "A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Palmieri v. Palmieri*, 2024-Ohio-2720, ¶ 13 (10th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 6} There is a notable exception to the abuse-of-discretion standard in this context. "The trial court's valuation of an asset in a divorce case is a question of fact reviewed under a manifest weight of the evidence standard." *Rossi v. Rossi*,

2014-Ohio-1832, ¶ 17 (8th Dist.), citing *Kapadia v. Kapadia*, 2011-Ohio-2255, ¶ 24 (8th Dist.); *see also Granada v. Rojas*, 2024-Ohio-1272, ¶ 8 (8th Dist.). At one time, it was declared that "[a]n appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence." *Rojas* at ¶ 8, citing *Haynes v. Haynes*, 2009-Ohio-5360, ¶ 14 (8th Dist.). That competent-credible-evidence standard, however, is a reference to the now-defunct civil manifest-weight-of-the-evidence standard derived from *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).[1] *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 17, quoting *State v. Thompkins,* 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶ 7} Thus, under the modern understanding of the manifest-weight standard, appellate courts review a domestic relations court's valuation of a marital assets under the manifest-weight standard as articulated in *Thompkins*: in reviewing the entire record, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*. at 387.

---

[1] We are aware that some districts have included the valuation of a marital asset under the umbrella of the abuse-of-discretion standard of review. *See, e.g., Hosang v. Hosang,* 2019-Ohio-54, ¶ 14 (6th Dist.). Although citing abuse of discretion as the standard of review, those panels still reviewed the weight of the evidence presented in favor of the valuation. *Id.*

{¶ 8} In his first assignment of error, Michael advances several claims with respect to the domestic relations court's valuation of his business assets that were considered marital property. In reviewing the trial evidence, the court found that Michael had six business interests valued at $1,448,850: Southwest Urology LLC ($75,000), 6900 Surgery Center LLC ($370,000), Pearl Road Surgery Center LLC ($405,000), Emerald Necklace Urology Group LLC ($270,000), "If Defendant is a 'Designated Physician'" ($38,850),[2] and the Smith Road Properties sale proceeds ($290,000). Kristy was awarded a lump sum of $724,425, to be paid in monthly installments of $3,000 while the spousal-support award is active, rising to $7,000 a month thereafter.

{¶ 9} Michael first claims that a double counting occurred when the proceeds from the sale of the Smith Road Properties, totaling $290,000, were divided equally as part of the marital assets even though that money had already been deposited into a retirement account, which was also divided equally between the parties. Kristy agrees with Michael, in that he is correct "in asserting that the funds from the sale went directly into the Keystone Financial retirement account which was later distributed equally to the parties." Appellee/Cross-Appellant's Brief, p. 7. Confusingly, Kristy argues that "after the division, [Michael] later argued that he returned those funds to his Keystone account but never presented

_____

[2] Neither party explained the meaning of this line item in their respective appellate briefing.

any evidence of the same at trial." *Id.* It is unclear what funds she is claiming were returned or how that impacts her concession.

{¶ 10} Kristy nonetheless claims that Michael waived that argument because he did not advise the court of the issue until objecting to the proposed judgment entry of divorce. Regardless of the timing of the objection, she agrees the double counting occurred and has cited no authority in support of the waiver argument in the context of equitably dividing the couple's assets. *See* App.R. 16(A)(7). Because the proceeds from the sale of the property liquidated Michael's interest in that property and those funds were deposited into the retirement account separately divided, it would be inequitable to divide the same money twice as a separate category of marital assets — in effect awarding one party the entire value of the asset when the intent was to equitably divide the assets in an even manner. The proceeds from the sale of the asset should only be counted in one category of assets, a business asset or as part of the retirement account.

{¶ 11} Michael also claims that he has no ownership interest in Southwest Urology, contrary to the court's conclusion. His supposed interest was valued at $75,000 in the final judgment of divorce. At trial, Dr. Michael Barkoukis testified that he was the sole owner of that company, which was a shell corporation set up to manage Emerald Necklace Urology. Michael does have a one-sixth interest in Emerald Necklace Urology, but that interest was separately assessed and that value equally divided. There is undisputed evidence that Dr. Barkoukis is the sole owner

of Southwest Urology, which necessarily means Michael has no monetary interest in that entity.

{¶ 12} In response, Kristy claims that her financial expert, Edward Blaugrund, established the $75,000 valuation at trial. No citation to the specific portion of his testimony was provided. Upon review of his trial testimony, however, it is apparent that Blaugrund was unable to qualify Michael's share of ownership interest in Southwest Urology. Tr. 27:3-14 (Apr. 27, 2023). Blaugrund provided testimony establishing the overall value of Southwest Urology and speculated that if Michael owned a one-percent interest in Southwest Urology, that would be worth $38,850. Tr. 23:19-23. Nothing within Blaugrund's testimony established that Michael held an interest in Southwest Urology. Without more, we are constrained to agree with Michael that the $75,000 valuation of his alleged interest Southwest Urology is unsupported by the record.

{¶ 13} Because the parties seemingly agree that the $290,000 representing the proceeds of the Smith Road Properties sale were deposited into the retirement account that was separately divided between the parties and because there is no evidence supporting the $75,000 valuation of Southwest Urology, those assets should not have been included in the aggregate value of all business assets considered marital property.

{¶ 14} There is, however, no merit to Michael's remaining claims regarding his investment in 6900 Surgery Center or a single investment in his retirement account. Michael challenges the inclusion of his interest in 6900 Surgery Center,

valued at $370,000 in the final divorce decree. In this appeal, he claims his interest in that corporation is not marital property because the "sum of $370,000 . . . was invested in his practice/business" and he was "clearly" awarded that money in a previous divorce. He also claims a $138,613 investment in his retirement account, which grew approximately tenfold over the years, should be deemed separate property because the investment predated the marriage. Michael provided no account statements to demonstrate the rate of return.

{¶ 15} In a divorce proceeding, "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage" is presumed to be marital property. R.C. 3105.171(A)(3)(a)(iii). A party who claims an acquired-before-marriage asset is separate property has the burden of proving that claim. *Rossi*, 2014-Ohio-1832, at ¶ 43 (8th Dist.). It is not enough to demonstrate that the property was obtained before the marriage. In order to demonstrate that separate property retains its identity as separate property, it must be traced. *Id*. Part of that tracing includes identifying the value of the asset at the time of marriage and demonstrating passive appreciation. *Kellam v. Bakewell,* 2014-Ohio-4635, ¶ 28 (6th Dist.), quoting *Bizjak v. Bizjak*, 2005-Ohio-7047, ¶ 12 (11th Dist.).

{¶ 16} We cannot conclude that the court erred by including the value of Michael's interest in 6900 Surgery Center and the $138,613 investment in the retirement account as marital property. As the magistrate noted, Michael's financial advisor testified as to the value of the account and Michael's interest in the surgery

center, but he did so based on his assessment of the standard of review for a trial, whether there was a preponderance of evidence demonstrating the separateness of the property. In other words, his testimony was limited to impermissibly offering a bare conclusion. *See Moore v. ThorWorks Industries*, 2024-Ohio-1617, ¶ 53 (6th Dist.), quoting *Gannett v. Booher*, 12 Ohio App.3d 49, 52 (6th Dist. 1983). No supporting documents were provided for consideration by the trier of fact. The first assignment of error is overruled in part and sustained in part.

{¶ 17} Michael's second and third assignments of error are related. He claims that the court committed prejudicial error in its division of property because it failed to consider the fair market value of his interest in Emerald Necklace Urology in his sale of it to Integrated Oncology Network ("ION"), a separate entity buying out Michael's interest in Emerald Necklace Urology. The sale occurred between the trial testimony of Kristy's expert and the final judgment.

{¶ 18} Michael attached a document titled "Severance and Release of Claims Agreement," entered between him and ION detailing the terms of his separation with ION and Southwest Urology, to his motion to "reopen evidence" and supplemental objections filed while the court was considering the objections to the magistrate's decision. In that agreement, dated January 26, 2024, ION agreed to pay Michael $205,000 for his stake in Emerald Necklace Urology — evidence of the fair market value of his ownership interest in that business entity. At trial, which occurred months earlier, his ownership interest in Emerald Necklace Urology was valued at $270,000 based on the evidence available at the time.

{¶ 19} The trial court, at the behest of Kristy, treated Michael's request to consider the new evidence as one for a new trial under Civ.R. 59. In denying Michael's motion, the court cited *Schwenk v. Schwenk*, 2 Ohio App.3d 250 (8th Dist.1982), and concluded the evidence was not discoverable before or during trial, and therefore, it could no longer be considered. *Schwenk* does not stand for such a proposition. The panel there concluded that "[a] trial court does not abuse its discretion in overruling a motion for a new trial based upon newly discovered evidence where the events constituting the newly discovered evidence occurred after trial *and subsequent to the court's announcement of decision but prior to entry of judgment.*" (Emphasis added.) *Id.* at syllabus. *Schwenk* involved a case in which the final judgment was issued, and less than three weeks later one of the parties moved for a new trial under Civ.R. 59. *Id.* at 251. That decision is not applicable to the procedural posture of the underlying case.

{¶ 20} In this case, Michael's request to "reopen evidence" occurred before the final judgment was rendered but during the time in which the court was considering the pending objections to the magistrate's decision. As a result, Civ.R. 53(D)(4)(d) applies, not Civ.R. 59. That rule provides that before conducting an independent review of the objected-to matters, "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." *See Hall v. Zimmerman*, 2021-Ohio-270, ¶ 9 (9th Dist.). "Courts have interpreted Civ.R. 53(D)(4)(d) . . . to permit trial courts to

consider 'additional evidence' in the form of facts *that were not in existence* when a case was heard by the magistrate." (Emphasis added.) *In re B.W.*, 2025-Ohio-1148, ¶ 32 (10th Dist.), quoting *Morrison v. Morrison*, 2014-Ohio-2254, ¶ 26 (9th Dist.).

{¶ 21} The fair-market purchase value of Michael's interest in Emerald Necklace Urology, as demonstrated through ION's purchase agreement, was not known at the time of trial, but nonetheless presents new evidence as to the value of his interest in that entity. That evidence was not available until January 2024, well after trial had concluded but before the court acted on the filed objections. Accordingly, Michael was permitted to invoke Civ.R. 53(D)(4)(d) in presenting the evidence to the trial court while the objections to the magistrate decision were pending. Because the domestic relations court applied the incorrect standard, it must be concluded that the court abused its discretion in overruling the motion to consider additional evidence. *Johnson*, 2021-Ohio-3304, at ¶ 39.

{¶ 22} The second and third assignments of error are sustained in part. With respect to Michael's appeal, the matter is remanded for the trial court to consider the new evidence demonstrating the fair market value of Michael's interest in Emerald Necklace Urology and to remove the valuations for the Smith Road Properties and Southwest Urology from the aggregate value of the business assets. All other arguments are overruled if not specifically addressed.

{¶ 23} Kristy's three cross-assignments of error challenge the domestic relations court's award and imposed duration of spousal support, the failure to require Michael to secure his support and property division obligations with a life

insurance policy and accruing interest, and the denial of her request for reasonable attorney fees. Those three arguments all suffer from the same defect — the arguments presented rely on the incorrect standard of review.

{¶ 24} Awarding spousal support, including determining the duration of that award, determining whether a property division obligation must be secured with a life insurance policy and accruing interest, and awarding of reasonable attorney fees are questions reviewed under the abuse-of-discretion standard.[3] *Williams v. Williams*, 2016-Ohio-7487, ¶ 9 (8th Dist.), citing *Gordon v. Gordon*, 2006-Ohio-51, ¶ 13 (11th Dist.) (Although the domestic relations court determines whether to grant spousal support after considering the factors listed in R.C. 3105.18, the standard of appellate review is abuse of discretion.); *Chattree v. Chattree*, 2014-Ohio-489, ¶ 71 (8th Dist.), citing *Daniels v. Daniels*, 2008 Ohio App. LEXIS 772, *9 (10th Dist. Mar. 4, 2008), and *Schoren v. Schoren*, 2005-Ohio-2102, ¶ 11 (6th Dist.) ("If the record reflects that the trial court considered the statutory factors, and if the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court

---

[3] Kristy included the spousal-support award in her discussion of the life-insurance issue, but under black-letter Ohio law, "A trial court may not secure a spousal-support order with life insurance, unless the order specifically states that the spousal support continues after the death of the obligor." *Janosek v. Janosek*, 2007-Ohio-68, ¶ 10 (8th Dist.), citing *Waller v. Waller,* 2005-Ohio-4891 (7th Dist.), R.C. 3105.18(B) ("Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise."). In this case, the spousal-support award expressly terminates upon the death of either party. We need not elaborate on that point further.

will uphold the award."); *McCoy v. McCoy*, 91 Ohio App.3d 570, 582-583 (8th Dist. 1993), citing *Nori v. Nori*, 58 Ohio App.3d 69 (12th Dist. 1989), and *Gore v. Gore*, 27 Ohio App.3d 141 (9th Dist. 1985) (A domestic relations court has discretion to include a requirement of obtaining a life insurance policy as security for the division of property settlement award.); *Watson v. Watson*, 2023-Ohio-3719, ¶ 43 (10th Dist.), citing *Roush v. Roush*, 2019-Ohio-4777, ¶ 15 (10th Dist.), and *Roubanes v. Roubanes*, 2014-Ohio-5163, ¶ 6 (10th Dist.) ("An award of attorney fees under R.C. 3105.73(B) lies within the sound discretion of the trial court.").

{¶ 25} Abuse of discretion generally applies in situations where the trial "'court is empowered to make a decision — of its choosing — that falls within a range of permissible decisions.'" *Miller v. Eldridge*, 146 S.W.3d 909 (Ky. 2004), quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001). "When trial courts are vested with discretion to render a decision, the court is not required to make any 'particular decision.'" *Murfey v. Muth*, 2025-Ohio-1184, ¶ 17 (8th Dist.), citing *Zervos* at 169. Generally, a case involving a discretionary decision involves the weighing of factors or circumstances based on some factual underpinning. "A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Palmieri v. Palmieri*, 2024-Ohio-2720, ¶ 13 (10th Dist.), citing *Johnson*, 2021-Ohio-3304 at ¶ 35. Notwithstanding, an appellate court's disagreement with the domestic relations court's weighing of evidence or consideration of individual factors standing alone does not rise to the level of error constituting an abuse of discretion.

{¶ 26} In this case, Kristy's arguments in the three assignments of error in the cross-appeal present the same arguments and consideration of the same factors presented to the domestic relations court. In essence, she is asking this panel to reach a different conclusion than the court below without regard to the trial court's rationale and conclusion. That form of review is best described as being de novo, a standard not applicable to the arguments presented. "'It is the duty of the appellant, not [an appellate court], to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record.'" *Russo v. Gissinger*, 2023-Ohio-200, ¶ 28 (9th Dist.), quoting *State v. Taylor*, 1999 Ohio App. LEXIS 397, *3 (9th Dist. Feb. 9, 1999); *see also State v. Quarterman*, 2014-Ohio-4034, ¶ 19, citing *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

{¶ 27} Even if this panel disagreed with the court's resolution of the spousal-support issue,[4] the decision to not require insurance or accruing interest to secure

---

[4] Notwithstanding, Kristy's appellate arguments as to the spousal-support award are inherently flawed. Kristy does not dispute the magistrate's conclusion as to Michael's projected income, amounting to nearly $300,000 a year. Instead, she claims that he ought to restart his consulting work that generated $46,000 a year in income in the past, and that the magistrate should impute the roughly $150,000 Michael received as distributions from his ownership of the medical businesses as future income. No spouse is required to work multiple jobs for the purposes of spousal support, and any distributions that Michael received from his ownership in the businesses would already be incorporated into the valuation of those assets as used for the purposes of dividing the marital property. And further, Kristy neglected to address the magistrate's consideration of the fact that she received approximately $138,000 a year in spousal support for approximately four years during the divorce proceedings.

the obligation on the division of property,[5] or the denial of attorney fees, that mere disagreement does not rise to the level constituting an abuse of discretion. In light of the limitations with the arguments as presented, solely rehashing the same arguments and considerations presented to the court below, we cannot find reversible error.

{¶ 28} Kristy's assigned errors in the cross-appeal are overruled.

{¶ 29} Michael's assigned errors are sustained in part and overruled in part. The matter is remanded for the trial court to consider the new evidence demonstrating the fair market value of Michael's interest in Emerald Necklace Urology and to remove the valuations for the Smith Road Properties and Southwest Urology from the aggregate value of the business assets. The remainder of his arguments are overruled.

{¶ 30} The final judgment of divorce is affirmed in part, reversed in part, and remanded for further proceedings limited to resolving the above-identified issues.

It is ordered that appellant/cross-appellee recover from appellee/cross-appellant costs herein taxed.

---

[5] Kristy claims that the distributive "order without any security of life insurance or interest amounts to an abuse of discretion." According to her, Michael "may die before his spousal support and property division obligations are fulfilled, leaving [her] and the minor children in a financially difficult position." As a result, she is essentially declaring that a life insurance policy and interest on the division of property award, which is paid in installments, is a mandatory obligation and the failure to impose will always be an abuse of discretion. In order to accept that argument, this panel would be creating a bright-line rule requiring the domestic relations court to award interest and secure the award with a life insurance policy in all cases. Under Ohio law, however, the court has discretion to impose those conditions. It is not mandated. We decline that invitation.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
ANITA LASTER MAYS, J., CONCUR