[Cite as *Moore v. ThorWorks Indus., Inc.*, 2024-Ohio-1617.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Eugene Moore | Court of Appeals No. E-22-048 |
| | E-23-032 |
| Appellant | Trial Court No. 2021 CV 0001 |
| v. | |
| Thorworks Industries, Inc., et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: April 26, 2024 |

* * * * *

Robert F. Linton, Jr., April M. Bensimone,
and Richard C. Alkire, for appellant.

James P. Silk, Jr., for appellees.

* * * * *

**DUHART, J.**

{¶ 1} In this consolidated appeal, appellant, Eugene Moore, appeals two judgments of the Erie County Court of Common Pleas. The first granted summary judgment in favor of appellees, ThorWorks Industries, Inc. ("ThorWorks") and ThorWorks' Production Manager Tracy Hines, on Moore's employer intentional tort

claims.  The second denied Moore's Civ.R. 60(B)(3) motion for relief from that judgment.  For the reasons that follow, the judgments of the Erie County Court of Common Pleas are affirmed.

## I. Background

{¶ 2} This case concerns an incident that happened on July 15, 2019, while Moore was working as a compounder for ThorWorks.  Moore fell into an unguarded mixer and suffered serious injuries.

## A. Factual History

{¶ 3} On January 4, 2021, Moore initiated the present matter when he filed a two-count complaint against ThorWorks, Hines, and ThorWorks' Safety Director Wayne Finlay.  The first count alleged that ThorWorks committed a tortious act "with the intent to injure another or with the belief that the injury was substantially certain to occur" as set forth in R.C. 2745.01.  The second count alleged that Hines and Finlay "acted with a conscious disregard for [Moore's] rights, safety, and in a manner which was substantially certain to inflict grave harm upon him," thereby satisfying the elements of a common law workplace intentional tort claim.  As the litigation proceeded, Moore voluntarily dismissed his claim against Finlay.

{¶ 4} Moore's claims are largely based on an OSHA report from a Certified Safety and Health Official ("CSHO") following an investigation into the injury.  The report stated,

2.

CSHO received a report of a serious accident where an employee suffered a broken leg when he fell into an asphalt mix tank while it was running. * * *

On March 16, 2019 the CSHO was in the area of the accident while inspecting a complaint item during a previous inspection regarding improper electrical wiring. The mixing operation was not running during the previous inspection but the lid on the tank was open and the CSHO could see the opening was unguarded. The CSHO informed management that the openings to the mixing tank needed to be guarded to keep employees from falling into the tank. There were no employees exposed to any hazards at the time and the process was shut down for the season so guarding of the opening was a recommendation made to the employer. On July 17, 2019 (sic), an employee operating the mixer did fall through the hatch opening and into the mixer while the mixer blades were slowly rotating. The employee had just returned from lunch, he had added a bucket of water to the mixer, and was sitting on the right hand edge of the tank to check the material. The employee noticed the material needed more water added. When the employee stood up he became light headed, his leg cramped up, and he fell into the hatch opening. The employee fell into the asphalt material being made while the mixer was still rotating and his leg became trapped and broken by the slowly rotating mixer blade. * * *

The employer informed the CSHO during the inspection that they were told by the CSHO during the previous visit that the opening should be guarded but the CSHO did not say it was required to be guarded. Regardless of if the CSHO said the employer should or must guard the opening the CSHO did inform the employer the opening needed to be guarded to prevent employees from falling through the opening. The employer was researching the guarding methods on their other equipment and fabricating a prototype guard in the four months prior to the accident and were taking some steps on abating the hazard prior to the accident.

{¶ 5} A number of depositions were also taken in this case.

{¶ 6} Moore testified that he became employed with ThorWorks around 2007. For the eight or nine years leading up to his accident, Moore was responsible for making various products in Mixer 9, including a pavement product called GatorPave. Mixer 9 was a large, industrial mixer with a ribbon blade into which ingredients would be pumped from several other tanks. Moore accessed the mixer by standing on a platform in front of the opening. The opening had lids, but Moore testified that he only closed the lids when he was blowing sand into a mixture. The rest of the time, Moore had the lids off of the mixer so that he could see inside of it to check the consistency of his product. In front of the opening was a "bump-out" or a "lip" which created space between it and the platform. Because GatorPave was a small batch, Moore could not see its consistency from behind the bump-out on the platform, so he would move off to the side of the tank where he

4.

could sit and look more easily. Moore testified that he did this 10-15 times for each batch of GatorPave that he made.

{¶ 7} Moore took great pride in his work and by all accounts was a very good compounder. Because of his skill and experience, Moore knew how to make his products better than anyone else, including his supervisors. Moore also had prior experience in production facilities and as a quality control manager where he was responsible for his employees' safety. Thus, Moore acknowledged and testified that "[s]afety was important to [him]."

{¶ 8} On the topic of safety, Moore testified that he has almost fallen into the mixer several times. Those incidents occurred after he blew sand into the mixer and there was some sand left on the floor, making it slippery. On a few occasions, another employee would see Moore slip and grab his shirt, half-jokingly saying that he saved Moore's life. Moore, however, did not report those incidents or raise any concerns about his safety because he thought that as long as he had good footing, he was safe.

{¶ 9} Similarly, Moore did not have any concerns about his safety when he would go to the side of the tank to look into it to check on a batch of GatorPave. Moore thought he was in a safe location when he was sitting on the side of the tank, and falling in "never crossed [his] mind." When another employee informed him in March 2019, following an unrelated OSHA inspection, that Mixer 9 needed a grate over its opening, Moore laughed at the employee and dismissed the suggestion because he did not think that grates were necessary. In hindsight, Moore admitted that a grate "would have sure been nice."

5.

{¶ 10} Moore also spoke of his relationships with the other people at ThorWorks. He testified that he was friendly with everyone and agreed that the employees were "a pretty tight-knit group." Specifically, Moore stated that he had a special relationship with his direct supervisor, Matt Bellamy. Moore was close to Matt's father and Matt grew up playing baseball with Moore's sons. Moore described another supervisor, Andrew O'Loughlin, as his "fourth son." He said the floor supervisor, Jeremiah Dawes, was a "good, good man." As to appellee Hines, Moore testified that they would have very personal conversations and Hines would offer advice or console Moore when he was going through a difficult time.

{¶ 11} When asked whether he thought any of his coworkers didn't like him or would want to injure him, however, Moore responded,

I can't say that. I -- I can't read their minds. I don't know. As far as -- I can't -- I don't -- I can't say that. I don't know. I don't know what people actually truly feel about me. I learned that after this accident who cared about me, you know, and I could tell who they were because they came to see me. They brought me money, they brought me comfort, they brought me conversation, you know, worry, I could see it on them. They were concerned for me, you know, so I can't say. You know, I can't say that. You know, that's something that I honestly cant's say.

* * *

6.

Wow. Man, that's -- wow. You know, I'm going to say it like this. I can't read nobody's minds. I'm there to do my job every day. I didn't come there basically to make friends. All I know is that I had a horrible accident, you know, and after I heard from my lawyers, they looked into it and they found out that OSHA had said -- spoke to I think it was [Hines] or I don't know if it was George or maybe both, and said that that tank needed to be covered.

So as far as my safety, if you -- if you cared for somebody, if I care for my children, I'm going to make sure that they're safe. If I cared for you in this room, I'm going to make sure that you're safe. You know, so I don't know how much I was cared for because I wasn't safe.

{¶ 12} Finally, Moore testified regarding the circumstances of the incident. He stated that he was making a batch of GatorPave that day and as he moved to the side of the tank to look in on it, his leg cramped causing him to lose his balance and fall into the mixer. Moore's left leg became caught in the ribbon blade, fracturing his left ankle. He was trapped in the GatorPave mixture for approximately three hours. As a result of the accident, Moore suffered extensive injuries.

{¶ 13} Tracy Hines testified that he became the director of operations at ThorWorks in February 2017. Prior to that, he was a professional racecar driver. As part of his position, Hines has received limited trainings on guards and pinch points. He has also trained other employees on lockout/tagout procedures.

7.

{¶ 14} Hines met Moore at the end of 2016 and developed a good working relationship with him. Hines testified that Moore would talk to him about personal issues that he was facing.

{¶ 15} In March 2019, Hines was present with George Sharp when OSHA came for a surprise inspection and discovered that the lockout/tagout procedure was not being followed while employees were working in a coal car tank. Notably, Hines alluded to a previous incident where Moore was doing a cleanout on Mixer 9, where the lockout/tagout procedure was not being followed because someone other than Moore was holding the key. Hines testified that while the inspector was viewing another area, he looked over at Mixer 9 and told Hines and Sharp, "Hey, you might want to look into that opening." Hines asked Sharp where Mixer 9's opening stood in comparison to the other mixers and Sharp said he would have to get back to him. Hines did not remember if Sharp ever did anything following that conversation.

{¶ 16} Regarding Mixer 9, Hines testified that Moore was extremely knowledgeable about the mixer, having years of experience on the machine. According to Hines, Moore was "a very good worker, very detailed," and took pride in his work. Hines himself did not get involved with Mixer 9 because Moore knew what he was doing and he never felt the need to even watch Moore operate it. For safety, the mixer had an eight-foot, four-inch-long bump out, but the opening was still accessible from the side. Hines testified, "[A]fter watching the video and seeing how the accident happened, we didn't realize somebody would climb the side of the tank. Didn't -- in normal operating

8.

procedures, we could have never imagined somebody climbing the side of the tank, so from there other precautions were made." Now, the mixer has a guardrail and a grate cover. The grate cover was installed on July 18, 2019, three days after the incident.

{¶ 17} Hines reviewed the CSHO report and disagreed with many of its findings. Hines disputed that in March 2019 "[t]he CSHO informed management that the openings to the mixing tank needed to be guarded to keep employees from falling into the tank." Hines reiterated that the inspector only said that someone should look into the opening. The report also included several statements attributed to "the employer," which Hines testified he did not say. Those statements were that "[t]he employer informed the CSHO during the inspection that they were told by the CSHO during the previous visit that the opening should be guarded but the CSHO did not say it was required to be guarded;" and "[t]he employer was researching the guarding methods on their equipment and fabricating a prototype guard in the four months prior to the accident and were taking some steps on abating the hazard prior to the accident."

{¶ 18} George Sharp, the maintenance director at ThorWorks, testified that he has been with the company for 13 years. He was present in March 2019 when the OSHA inspector came onsite. However, he did not remember the OSHA inspector making any comment about the opening on Mixer 9, and he testified that no one discussed the opening on Mixer 9 with him after the inspection.

9.

{¶ 19} Sharp considered Moore to be a friend and has remained friends with him following the incident. When Moore was trapped inside the mixer, Sharp focused his attention on talking to him and trying to comfort him.

{¶ 20} Following the incident, Sharp constructed a new platform and handrail for Mixer 9. He, however, did not have any part in constructing the grate that would be placed over the opening and believed that was the work of David Shupe.

{¶ 21} David Shupe oversaw the equipment production center at ThorWorks. He has worked at the company for almost 40 years. During that time, he met Moore. Although the two did not work together, Shupe talked with Moore, got along with him, and considered him to be "a decent guy."

{¶ 22} Shupe designed and fabricated Mixer 9. He testified that neither Mixer 9 nor any of the other mixers had grates over the opening because they "never had the need for them." Prior to the incident, no one had asked Shupe to look into creating a grate or a prototype for a grate for any of the mixers. Following the incident, Shupe was asked to produce a grate for Mixer 9 and he did so within the next couple of days.

{¶ 23} Wayne Finley also provided deposition testimony. From 2008 through the incident, Finley worked as a production supervisor for the color department at ThorWorks. In January 2019, Finlay added the title of safety director. Finlay testified that in the two years prior to the incident, an individual from ThorWorks' insurance company would come and conduct a mock OSHA inspection. According to Finlay, that individual never raised an issue with the opening on Mixer 9.

10.

**{¶ 24}** Finlay also testified about his relationship with Moore. Finlay described Moore as "my friend, my brother, and I love that guy and I would give my life for him" because "[h]e's just a beautiful human being."

### B. Procedural History

### 1. Summary Judgment

**{¶ 25}** On April 19, 2022, appellees jointly moved for summary judgment on Moore's claims. ThorWorks argued that to be entitled to relief under R.C. 2745.01, Moore must demonstrate that it acted with a specific intent to cause an injury. ThorWorks pointed to the undisputed deposition testimony that Moore was very knowledgeable about how to operate the mixer and was well-liked by his coworkers to demonstrate that there was no evidence of an intent to injure him. It further argued that even if the OSHA inspector previously told the company to guard the opening to the mixer, the failure to do so did not rise to the level of deliberate intent to injure Moore, noting that no one, including Moore, believed that there was any danger of anyone falling into the mixer.

**{¶ 26}** As to the common law claim, Hines argued that R.C. 4123.741 barred Moore from recovery against a coworker "for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment," where, as here, the injury is compensable under Worker's Compensation. Alternatively, Hines argued that summary judgment was appropriate because there was no evidence that he specifically intended to

11.

harm Moore or that an injury was substantially certain to occur. He cited the fact that Moore had operated that mixer in the same fashion for over eight years without falling in, thus demonstrating how unexpected this accident was.

{¶ 27} Moore opposed the motion for summary judgment. Moore argued that the evidence showed that ThorWorks was aware of the need for a grate over the mixer opening to prevent an employee from falling in as highlighted by the statements from the OSHA inspector. Moore also argued that ThorWorks was aware of the need for siderails to prevent an employee from falling in because siderails had been installed on other mixers throughout the company. Despite knowing the need for these safety precautions, ThorWorks deliberately did not install them. Furthermore, ThorWorks attempted to cover up its deliberate decision to not install the safety guards by lying to the OSHA investigator and telling him that during the four months before Moore's injury it was researching and developing prototype grates to cover the opening, but had not had an opportunity to install them. Moore asserted that this evidence demonstrated that ThorWorks had a deliberate intent to injure Moore under circumstances in which injuries were substantially certain to occur.

{¶ 28} In reaching this conclusion, Moore relied upon the affidavit of his expert in machine guarding and workplace injuries, Gerald C. Rennell. Based upon his review of the evidence, Rennell opined that ThorWorks knew of the need for the safety guards, yet required Moore to perform his job without the safety guards and thus "injury was certain to occur." Specifically, Rennell averred:

12.

7. Based on my review of the depositions of Eugene Moore, Tracy Hines, Wayne Finlay, George Sharp, David Shupe, Andrew O'Loughlin, their exhibits, the OSHA Investigation Reports, Thorworks (sic) Industries documents produced in response to discovery directed to Thorworks Industries and its Answers to Interrogatories and the State of Ohio Safety Violations Investigations, it is my opinion to a reasonable degree of technical certainty that Thorworks Industries, Inc. was aware of the OSHA requirements for a forty-two inch high safety rail with a mid-rail and a grate guard for the blender involved in Mr. Moore's injuries. Such guarding is critical since users of the blender while it is in operation required access to the opening for the purpose of adding content or viewing the product with the mixing blades turning. Had such guarding been present on July 15, 2019, Mr. Moore would not have been injured.

8. Further, it is my opinion to a reasonable degree of technical certainty, that Thorworks knew based on the March 2019 OSHA inspection that the blender had to be guarded to protect workers required to work in the vicinity of the unguarded opening from falling into the mixer and causing serious injury like Mr. Moore.

9. It is my opinion to a reasonable degree of technical certainty, that Mr. Moore was required to perform the job in the manner in which he was

performing it at the time of his injury and that in so performing his job on this unguarded machine, injury was certain to occur.

10. Because of this, it is my opinion to a reasonable degree of technical certainty that Thorworks acted with a conscious and deliberate disregard for the safety of its employees, by continuing to knowingly have its workers like Eugene Moore operate this ribbon blender without proper siderails and grate guards, knowingly did so in violation of OSHA and with full knowledge of the danger it presented, and thereby showed a deliberate intent to injure Mr. Moore.

{¶ 29} Regarding his common-law claim against Hines, Moore first argued that the immunity provided under R.C. 4123.741 does not apply to intentional tort claims. Moore next argued that Hines's conscious decision to not provide adequate guards on the mixer created a genuine issue of material fact regarding whether there was a deliberate intent to injure.

{¶ 30} Contemporaneously with their reply in support of the motion for summary judgment, appellees jointly filed a motion to strike Rennell's affidavit.[1] They argued that Rennell's affidavit consisted of unsupported conclusory opinions on legal issues, namely that ThorWorks showed a deliberate intent to injure Moore. Moore opposed this motion,

---

[1] ThorWorks and Hines also filed a motion to strike hearsay statements contained in the OSHA records. The trial court denied this motion and it is not raised as an issue on appeal.

14.

arguing that Rennell's affidavit complied with the requirements of Civ.R. 56(E) as it was based upon his review of admissible evidence and his scientific, technical, and other specialized knowledge.

{¶ 31} On October 19, 2022, the trial court entered its decision granting appellees' motion to strike Rennell's affidavit and awarding summary judgment in their favor.

{¶ 32} In striking paragraphs 7-10 of Rennell's affidavit, the trial court reasoned that Rennell was not competent to opine regarding ThorWorks' knowledge of the danger posed by the opening and the need for equipment safety guards to mitigate against that danger. Further, the court reasoned that Rennell was not competent to offer an opinion on whether ThorWorks acted with "deliberate intent" because that is a specific statutory term for which expert testimony is not appropriate. The trial court based its decision on this court's precedence in *Bliss v. Johns Manville*, 2021-Ohio-1673 (6th Dist.), and *Warren v. Libbey Glass, Inc.*, 2009-Ohio-6686 (6th Dist.).

{¶ 33} The trial court then turned its attention to Moore's claim against ThorWorks. Viewing the evidence in the light most favorable to Moore, it found that "[t]here is evidence of awareness of a dangerous condition and an utter lack of action, along with arguable misrepresentation to OSHA after the accident (that Defendants had been working on guarding, abating the hazard in the four (4) months preceding the accident, when that wasn't in fact the case)." Nonetheless, the trial court held that such conduct does not meet the statutory requirements unless there is evidence of an actual intent to cause injury and in this case, there was "no evidence of 'deliberate intent' to

15.

injure." Therefore, the court concluded that ThorWorks was entitled to summary judgment.

{¶ 34} Finally, the trial court addressed Moore's common law intentional tort claim against Hines. The trial court first determined that Hines was not entitled to immunity under R.C. 4123.741, noting that the issue is "not clear cut" because the Ohio Supreme Court has not directly addressed it and there are no cases from this district on point. The court then applied the common-law standard pursuant to *Fyffe v. Jeno's Inc.*, 59 Ohio St.3d 115 (1991), paragraph one of the syllabus, which requires Moore to demonstrate:

> (1) knowledge by the [defendant] of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the [defendant] that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the [defendant], under such circumstances, and without such knowledge, did act to require the employee to continue to perform the dangerous task.

{¶ 35} The trial court found that while there was sufficient evidence to survive summary judgment on the first and third elements, there was not sufficient evidence from which a jury could find that Hines knew that injury was substantially certain to occur. It reasoned that Hines testified that he did not realize someone would climb to the side of

16.

the tank to look into it and that in ordinary operations a compounder would be in front of the mixer protected by the bump out. Hines had never watched Moore make a complete batch of GatorPave and was unaware of Moore's habit of looking in from the side. In addition, Moore—who was indisputably more knowledgeable about Mixer 9 and its operation than Hines—never gave it a thought that he could fall into the opening and did not think that it needed to be guarded prior to his injury. Therefore, the trial court concluded that summary judgment to Hines was appropriate.

{¶ 36} Moore timely appealed the trial court's October 19, 2022 judgment.

### 2. Civ.R. 60(B) Motion for Relief from Judgment

{¶ 37} While the appeal was pending, Moore discovered that a document submitted to him in discovery had been previously altered by ThorWorks. Specifically, the document was an internal injury report form that was completed by an employee who was near Mixer 9 around the time of Moore's injury. In the original form that was completed on July 16, 2019, in response to the question "What could have been done to prevent the injury/near miss?" the employee responded, "listen to OSHA." This form was submitted to OSHA as part of the investigation. However, the document submitted to the Bureau of Workers' Compensation and later to Moore in discovery did not contain that response and it appeared that the response had been "whited out."

{¶ 38} Moore subsequently filed a Civ.R. 60(B) motion for relief from the October 19, 2022 judgment on the grounds of fraud, misrepresentation, or other misconduct of an

17.

adverse party. On March 13, 2023, this court remanded the matter to the trial court for consideration of Moore's Civ.R. 60(B) motion.

{¶ 39} In his motion, Moore argued that a jury could reasonably infer that ThorWorks intentionally deleted "listen to OSHA" as part of a cover up due to its guilty mind, and that the deletion is evidence of ThorWorks' actual malice and deliberate intent to injure him.

{¶ 40} ThorWorks opposed the motion. It first argued that it did not commit fraud, but instead provided the documents that it had. Any alterations to those documents occurred before discovery. Further, ThorWorks noted that Moore was in possession of both documents during the underlying litigation and could have raised the issue at that time. Moore received the unredacted version through his public records request from OSHA and received the redacted version in discovery. Finally, ThorWorks argued that Moore did not have a meritorious claim to present because the information contained in the unredacted form was duplicative of the facts already considered by the trial court— i.e, that ThorWorks was aware of the need to provide a safety guard around the opening yet still subjected Moore to the dangerous condition. In granting summary judgment, the trial court held that even if those facts were true, they did not demonstrate a deliberate attempt to injure.

{¶ 41} Thereafter, Moore filed a motion for limited discovery on ThorWorks' fraud, misrepresentation, and misconduct. He argued that discovery was necessary to determine (1) how and why the original report was altered and by whom, (2) why

18.

ThorWorks produced the altered report in discovery instead of the original report and who made that decision, and (3) why producing the altered report in discovery was not a misrepresentation.

{¶ 42} On April 5, 2023, the trial court held a hearing on Moore's Civ.R. 60(B) motion and his motion for limited discovery. Hines was called as a witness and testified that he conducted an investigation regarding the alteration of the report but could not determine who altered it or why it was altered. In addition, Hines produced documents pertaining to the investigation at Moore's request. According to Hines, only the altered form was contained in the Human Resources file. This form was sent to ThorWorks' insurance agent shortly after the incident and later to the Bureau of Workers' Compensation. Hines unearthed the original form in a file cabinet in Wayne Finlay's old office. Finlay was the person who sent the information to OSHA for its investigation following the injury, but he had since retired. Hines testified that he first learned of the existence of two different versions of the form in 2023 when Moore filed his Civ.R. 60(B) motion for relief from judgment.

{¶ 43} Following the hearing, the parties simultaneously submitted written closing arguments. The trial court then entered its judgment on May 2, 2023.

{¶ 44} In its May 2, 2023 judgment, the trial court denied Moore's Civ.R. 60(B) motion and his motion for limited discovery. It reasoned that Moore did not prove fraud, misrepresentation, or other misconduct under Civ.R. 60(B)(3). The court determined that

19.

while the evidence established a discovery violation, "it does not establish that Thorworks' conduct was fraudulent, or a deliberate act designed to skew truth finding."

{¶ 45} Additionally, the trial court noted that Moore had the original form in his possession through a FOIA request for eight months before the complaint was filed. Moore then received the altered form in discovery six months after the filing of the complaint. The trial court found that because he had both forms in his possession for 10 months prior to the motion for summary judgment, Moore was not prevented from fully and fairly presenting his case.

{¶ 46} The trial court also found that any misconduct on the part of ThorWorks was not material to obtaining the judgment. It first reasoned that the substance of what was deleted—"listen to OSHA"—was fully argued and considered on summary judgment. The court then addressed and rejected Moore's argument that the alteration itself is evidence of a "guilty mind" from which a trier of fact could find ThorWorks had a deliberate intent to injure, reasoning that ThorWorks' failure to produce the original form was "immaterial" to establishing deliberate intent. Likewise, as to Moore's claim against Hines, the trial court concluded that because Hines was not involved in the alteration, had no knowledge of the alteration, and produced what he believed were complete and accurate reports, "this evidence about the altered documentation is not germane as to Hines' personal liability."

{¶ 47} Finally, the trial court held that Moore was not entitled to additional discovery because it was "doubtful the broad ranging discovery now being proposed

would lead to determining who altered the document," and because "the alteration is immaterial and extremely tenuous, at best, to the critical issue -- whether Thorworks had a 'deliberate intent' to injure Plaintiff."

{¶ 48} Moore timely appealed the May 2, 2023 judgment and the matter has been consolidated with his appeal from the October 19, 2022 award of summary judgment.

## II. Assignments of Error

{¶ 49} On appeal, Moore presents five assignments of error for review:

1. The trial court erred in denying plaintiff's 60(B)(3) motion for relief based on newly discovered evidence of the defendants' fraud and misconduct.

2. The trial court abused its discretion by denying plaintiff's motion for limited discovery on the incident report ThorWorks altered with whiteout.

3. The trial court erred as a matter of law in granting summary judgment in favor of plant manager defendant Tracy Hines.

4. The trial court erred as a matter of law in granting summary judgment in favor of defendant ThorWorks.

5. The trial court erred as a matter of law in striking portions of safety expert Rennell's affidavit.

21.

## III. Analysis

{¶ 50} For ease of discussion, Moore's assignments of error will be addressed in reverse order.

## A. Expert Affidavit

{¶ 51} In his fifth assignment of error, Moore argues that the trial court erred in striking portions of Rennell's expert affidavit. "A trial court's decision to deny a motion to strike will not be overturned absent abuse of discretion." *Bliss v. Johns Manville*, 2021-Ohio-1673, ¶ 16 (6th Dist.), citing *Bank of Am., N.A. v. Hizer*, 2013-Ohio-4621, ¶ 16 (6th Dist.); *State ex rel. Mora v. Wilkinson*, 2005-Ohio-1509, ¶ 10. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id.*, citing *Wilkinson* at ¶ 10.

{¶ 52} "An affidavit offered in support of or in opposition to a motion for summary judgment must comply with Civ.R. 56 and the Rules of Evidence regarding expert opinion testimony." *Id.* at ¶ 17, citing *Warren v. Libbey Glass, Inc.*, 2009-Ohio-6686, ¶ 13 (6th Dist.). Civ.R. 56(E) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

{¶ 53} Under Evid.R. 702(A), expert testimony is admissible if, among other things, "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay

22.

persons." Evid.R. 705 provides that "[t]he expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data." Additionally, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. However, "[a]lthough a witness may be qualified to give an opinion concerning a matter upon which opinion evidence may be admissible in and pertinent to the determination of an issue, as a general rule such an opinion, whether expert or otherwise, may not be admitted when it, in effect, answers the very question as to the existence or nonexistence of an ultimate fact to be determined by the jury." *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), paragraph one of the syllabus; 1980 Staff Note Evid.R. 704. "An expert may not offer an opinion which embraces the 'ultimate issue' if that opinion is essentially a bare conclusion significantly lacking in supporting rationale." *Gannett v. Booher*, 12 Ohio App.3d 49, 52 (6th Dist.1983). "These rules require that affidavits set forth facts, not legal conclusions." *Bliss* at ¶ 17, citing *Warren* at ¶ 15.

{¶ 54} In *Warren*, this court addressed a similar affidavit also from Rennell. In that case, Rennell opined that the defendant "was aware of a dangerous process, procedure, instrumentality or condition within its business operation, namely the unguarded cardboard baler," and "knew the dangerous moving parts of the baler were substantially certain to cause injury." *Id.* at ¶ 19-20. The trial court struck that portion of Rennell's affidavit and this court affirmed, reasoning that an expert may not testify to the

23.

ultimate issue of a defendant's knowledge or awareness of the dangerous nature of a process or machine. *Id.* at ¶ 23.

{¶ 55} Here, paragraphs 7-10 of Rennell's affidavit conclude that ThorWorks was aware of the need for railings and a grate guard to prevent injury to Moore. Further, Rennell's affidavit opines that because of the lack of those guards, injury was substantially certain to occur. Finally, it asserts that ThorWorks "acted with a conscious and deliberate disregard for the safety of its employees" "with full knowledge of the danger [the mixer] presented," "and thereby showed a deliberate intent to injure Mr. Moore."

{¶ 56} Like those in *Warren*, these statements impermissibly reach the ultimate issue of ThorWorks' knowledge or awareness of the dangerous nature of the mixer and present the bare conclusion that ThorWorks acted with deliberate intent to injure Moore. Therefore, the trial court did not abuse its discretion in striking paragraphs 7-10 of Rennell's affidavit.

{¶ 57} Accordingly, Moore's fifth assignment of error is not well-taken.

## B. Summary Judgment

{¶ 58} In Moore's fourth and third assignments of error, he contends that the trial court erred when it awarded summary judgment to ThorWorks and Hines.

{¶ 59} This court reviews the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129 (9th Dist. 1989); *Grafton v. Ohio Edison Co.*, 77 Ohio

24.

St.3d 102, 105 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 60} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial." *Id.*

### 1. Statutory Claim against ThorWorks under R.C. 2745.01

{¶ 61} Moore brought his claim against ThorWorks under R.C. 2745.01, which provides, in relevant part,

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that

the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

{¶ 62} The intent of R.C. 2745.01 is "to limit claims for employer intentional torts to situations in which an employer acts with the 'specific intent' to cause an injury to another." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 2012-Ohio-5685, ¶ 24, citing *Kaminski v. Metal & Wire Prods. Co.*, 2010-Ohio-1027, ¶ 56. R.C. 2745.01 harmonizes Ohio law with the general rule in the majority of jurisdictions that an employer's liability "cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury." *Id.* at ¶ 23, quoting *Kaminski* at ¶ 99-100. "[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Id.* at ¶ 25.

{¶ 63} In *Houdek*, the employee was injured when he was struck by a sideloader while he was working in a dimly lit aisle. *Id.* at ¶ 8. Prior to the injury, one of the sideloader operators had asked the plant manager if he should avoid working in the same aisle as the other employees, but the plant manager said that would be unnecessary. *Id.* at

26.

¶ 6. The Ohio Supreme Court determined that "although the evidence shows that ThyssenKrupp may have placed Houdek in a potentially dangerous situation, it does not demonstrate that either management or [the sideloader operator] deliberately intended to injure him." *Id.* at ¶ 26. Therefore, the Ohio Supreme Court reversed the court of appeals and entered summary judgment in favor of ThyssenKrupp. *Id.* at ¶ 29.

{¶ 64} Recently, this court addressed a similar claim in *King v. Buildtech Ltd. Construction Development*, 2023-Ohio-1092 (6th Dist.). In that case, King was working on the second story of a building when he fell through an unguarded hole in the floorboards. *King* at ¶ 2. The trial court granted summary judgment in favor of the employer on King's intentional tort claim. On appeal, this court affirmed, reasoning,

> Assuming in this case that the hole was, in fact, unguarded at the time King fell, there is nothing showing that Buildtech's failure to put up guardrails rose to the level of intent to injure. Although Buildtech placed King in a potentially dangerous situation by leaving an open hole where workers could potentially fall through it and instructing King to move wood to an area near the hole, there is no indication that Buildtech failed to place guardrails with the deliberate, specific intention of someone getting hurt.

*Id.* at ¶ 46.

{¶ 65} Moore attempts to distinguish the present situation from *King* by citing to the fact that an OSHA inspector warned Hines and Sharp about the opening on Mixer 9 and instructed them to cover it to prevent employees from falling into the mixer. Moore

also references the lockout/tagout incident that Hines alluded to, wherein Moore was working inside of a mixer to clean it, but his supervisor was the one who had the key to the lock. Lastly, Moore points to the "coverup" wherein after the accident ThorWorks (1) lied to the OSHA inspector and told him that the company had been researching and developing a prototype guard for the four months following the March 2019 warning, when in fact it had not, and (2) altered the original injury report form to delete the phrase "listen to OSHA" under the section of what could have been done to prevent the accident. From this evidence, Moore argues that a question of fact exists from which a reasonable jury could find that ThorWorks had a deliberate intent to injure him.

{¶ 66} We disagree. The undisputed evidence in this case is that Moore was good at his job and universally liked by his co-workers, was more knowledgeable about Mixer 9 and its operation than any other employee, had operated the mixer for at least eight years, and did not consider it to be unsafe without the handrails or a grate guard. Nothing from this suggests that ThorWorks would have any intention of deliberately injuring Moore.

{¶ 67} Further, even assuming that ThorWorks was aware of a dangerous situation and directed Moore to continue working near that danger, *Houdek* and *King* make clear that such facts do not rise to the level of demonstrating a deliberate intent to injure. *See Houdek* at ¶ 24, quoting 6 Larson, *Workers' Compensation Law*, Section 103.03, 103-7 to 103-8 (2001) ("an employer's 'knowingly permitting a hazardous work condition to exist

28.

[and] knowingly ordering employees to perform an extremely dangerous job * * * falls short of the kind of actual intention to injure that robs the injury of accident character.'").

{¶ 68} Also, Moore's reference to the lockout/tagout incident does not demonstrate a deliberate intent to injure. While failing to properly follow the lockout/tagout procedures by allowing the supervisor to have the key to the lock instead of the person exposed to the dangerous mechanism is a serious safety concern, it is not reasonable to infer from that circumstance that ThorWorks deliberately intended to injure Moore. To the contrary, ThorWorks took steps to protect Moore by attempting to follow the lockout/tagout procedure, albeit imperfectly.

{¶ 69} Likewise, it is not reasonable to infer from the alleged "coverup" that ThorWorks had a specific intent to injure. At best, whether it was telling the OSHA inspector after the incident that plans were underway for a grate guard when they were not, or intentionally hiding the response "listen to OSHA" on the injury report form, the "coverup" demonstrates that ThorWorks knowingly and deliberately did not install the safety measures. But that alone is not enough. Moore must demonstrate that ThorWorks had a specific intent to injure him. Nothing in the record supports that specific intent.

{¶ 70} Similar to *Houdek*, Moore's injuries "are the result of a tragic *accident*, and at most, the evidence shows that this accident may have been avoided had certain precautions been taken." (Emphasis sic.) *Houdek* at ¶ 28. When viewed in the light most favorable to Moore, the record contains no support for the proposition that ThorWorks deliberately intended to injure him. Therefore, we hold that the trial court did

29.

not err when it awarded summary judgment to ThorWorks on Moore's employer intentional tort claim.

{¶ 71} Accordingly, Moore's fourth assignment of error is not well-taken.

### 2. Common Law Claim against Hines under the *Fyffe* Standard

{¶ 72} In his third assignment of error, Moore argues that the trial court erred when it awarded summary judgment in favor of Hines on his common law intentional tort claim under *Fyffe*, 59 Ohio St.3d 115 (1991). To proceed on such a claim, Moore must demonstrate:

> (1) knowledge by the [co-employee] of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the [co-employee] that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the [co-employee], under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe* at paragraph one of the syllabus.

{¶ 73} At the outset, appellees argue that Hines is immune from liability pursuant to R.C. 4123.741, which provides,

> No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at

common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code.

Appellees contend that Moore sustained an injury in the course of his employment that was found to be compensable under workers' compensation, and therefore Hines cannot be held liable.

{¶ 74} The issue of whether an employee can be subject to an employer intentional tort claim under the *Fyffe* standard in light of R.C. 4123.741 and 2745.01 is unsettled. In *State ex rel. Yeaples v. Gall*, 2014-Ohio-4724, ¶ 18, the Ohio Supreme Court had an opportunity to resolve the issue but declined to "tread into the complex workers' compensation milieu to determine whether Ohio recognizes the workplace intentional tort against a co-employee," instead deciding the original actions before it on other grounds. Similarly, we need not determine if Hines is subject to the claim because even if he is, there is no evidence that he had knowledge that harm to Moore was a "substantial certainty."

{¶ 75} As an aside, the concurring opinion believes that appellees' immunity argument is not properly before the court because it was not raised in a cross-appeal. We disagree and conclude that the issue was properly raised in appellees' brief, and we

address the reasoning of the concurring opinion only to mitigate the potentially outsized impact it could have on appellate procedures.

{¶ 76} Relevant here is App.R. 3(C). App.R. 3(C)(1) instructs that "[w]hether or not an appellee intends to defend an order on appeal, an appellee who seeks to change the order * * * shall file a notice of cross-appeal with the clerk of the trial court." Conversely, App.R. 3(C)(2) instructs that "[a] person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-assignment of error."

{¶ 77} As recognized by the concurring opinion, "without filing a cross-appeal, an appellee can 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon a matter overlooked or ignored by it.'" *Kaplysh v. Takieddine*, 35 Ohio St.3d 170, 175 (1988), quoting *United States v. American Ry. Express Co.*, 265 U.S. 425, 435 (1924).

{¶ 78} Here, appellees do not seek to change the award of summary judgment in their favor that was entered on October 19, 2022. Instead, they attack the trial court's reasoning in the portion of that order that determined Hines is not immune from liability under R.C. 4123.741. Appellees' argument on appeal is that Hines is immune and summary judgment should have been entered in his favor on that basis. Appellees are clearly raising alternative grounds in support of the October 19, 2022 judgment.

32.

**{¶ 79}** The concurring opinion asserts, however, that if this court were to accept appellees' immunity argument and find that Hines was entitled to statutory immunity then we would be required to reverse "the trial court's judgment finding that he was not immune from [Moore's] tort action." To the contrary, if we were to find that the trial court erred in concluding that Hines was not immune, the October 19, 2022 judgment would not be reversed, but would still be affirmed because it correctly ordered summary judgment in favor of Hines on Moore's common law intentional tort claim, even if it did so for a different reason.

**{¶ 80}** The concurring opinion also argues that if we determined that summary judgment was appropriate because Hines was statutorily immune to Moore's claim then "we would certainly be enlarging Hines's rights to be free from even responding to [Moore's] tort action while lessening [Moore's] rights to have his action decided on the merits rather than immunity grounds." *See Kaplysh* at 175 ("An appellee who does not cross-appeal generally cannot oppose the final judgment on appeal, or attack it to enlarge his own rights or lessen the rights of his adversary."). However, statutory immunity is not an impenetrable cloak that prevents a person from being sued or having to respond to a claim. Rather, "[s]tatutory immunity is an affirmative defense." *Szuch v. FirstEnergy Nuclear Operating Co.*, 2016-Ohio-620, ¶ 10 (6th Dist.), citing *State ex rel. Koren v. Grogan*, 68 Ohio St.3d 590, 594, (1994). "It is well settled in Ohio that the defendant asserting an affirmative defense has the burden of proof in establishing such defense."

33.

*Id.*, quoting *MatchMaker Internatl., Inc. v. Long*, 100 Ohio App.3d 406, 408, (9th Dist. 1995).

{¶ 81} In this case, Moore advanced his common law intentional tort claim and appellees responded by arguing that Hines was immune from liability. The trial court found that Hines was not immune, but nonetheless held that he was entitled to summary judgment on the merits of the claim. If, on appeal, we would find that Hines was immune from liability, Hines would be in exactly the same position in that he would be entitled to summary judgment on Moore's claim. Likewise, Moore would be in the same position because, whether on the grounds of statutory immunity or a failure on the merits, he would not have a right to recover on his claim. Thus, attacking the October 19, 2022 judgment by raising the issue of immunity on appeal does not enlarge appellees' rights or lessen Moore's rights.

{¶ 82} Therefore, because appellees were simply defending the October 19, 2022 summary judgment order on a ground other than that relied on by the trial court, they were not required to file a cross-appeal under App.R. 3(C).

{¶ 83} This result is consistent with case law involving substantially similar circumstances. In *Burr v. Ohio State Hwy. Patrol*, 2012-Ohio-4906 (10th Dist.), Burr filed a negligence action against the Ohio State Highway Patrol ("OSHP"). In the trial court, OSHP argued that it was immune from liability under R.C. 2743.02(A)(3). The trial court rejected this argument, finding that there was a special relationship between OSHP and Burr, which precluded immunity. *Id.* at ¶ 21. Nonetheless, the trial court

34.

awarded judgment in favor of OSHP, finding that Burr did not prove his negligence claim. Burr appealed, arguing an evidentiary issue and that the trial court's judgment was against the manifest weight of the evidence. OSHP did not cross-appeal, but maintained as a cross-assignment of error in its appellate brief that the trial court erred when it determined that OSHP was not immune from liability. *Id.* at ¶ 12.

**{¶ 84}** On appeal, the Tenth District assumed, without deciding, that OSHP was not immune to Burr's negligence action, but proceeded to affirm the trial court's judgment as not being against the manifest weight of the evidence. *Id.* at ¶ 34. The court then addressed Burr's argument that it should disregard OSHP's cross-assignment of error because OSHP did not file a cross-appeal. It concluded that while a cross-appeal was not necessary, the issue of immunity was moot because Burr's claims failed on their merits. The court explained:

> A cross-appeal, however, is not required where a party intends to defend an appealed judgment on a ground other than that relied upon by the trial court, but where the person does not seek to *change* the judgment. App.R. 3(C)(2). Cross-assignments of error may be asserted for the purpose of preserving the relief granted, but for reasons not advanced by the trial court. *Hirshell v. Fertgus*, 5th Dist. Stark No. 2011 CA 00199, 2012-Ohio-1705, ¶ 32. Here, OSHP is simply defending the trial court's judgment in OSHP's favor on grounds of immunity, in addition to the trial court's rationale that Burr failed to prove his claims. Thus, the absence of a cross-appeal does

not limit OSHP's right to assert immunity pursuant to a cross-assignment of error.

(Emphasis added.)  *Id.* at ¶ 38.

{¶ 85} Like *Burr*, here appellees are defending the trial court's judgment in their favor on grounds of immunity, in addition to the trial court's rationale that Moore failed to prove his claims.  Thus, consistent with *Burr*, appellees were not required to file a cross-appeal under App.R. 3(C)(2).[2]

{¶ 86} As to the merits of this case, we need not address whether Hines is immune from Moore's common law intentional tort claim because even if he is not, Moore's claim must fail.  Instructive here is the second paragraph of the syllabus in *Fyffe*, 59 Ohio St.3d 115:

> To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established.  Where the employer acts despite his knowledge of some risk, his conduct may be negligence.  As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness.  As the probability that the consequences will

---

[2] Lest one glean from *Burr* that although a cross-appeal is not required, a cross-assignment of error is needed to properly raise the issue before the appellate court, the Staff Notes to the 2013 amendment to App.R. 3(C)(2) disabuse this notion:  "App.R. 3(C)(2) is amended to clarify that a party seeking to defend a judgment on a ground other than that relied on by the trial court need not file a cross-assignment of error to do so; instead, that party may simply raise the arguments in the appellate brief."

follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.

{¶ 87} Courts that have applied the *Fyffe* test have looked to the existence of prior accidents as "probative of whether an employer knows that an injury is substantially certain to occur." *Taulbee v. Adience, Inc., BMI Div.*, 120 Ohio App.3d 11, 20 (10th Dist. 1997). In *Partin v. C.S. White Indus., Inc.*, 2016-Ohio-4894, ¶ 67 (2d Dist.), for example, the Second District held there was "no basis to conclude" that the employer was substantially certain that the employee would injure his thumb in a machine press where the press had been operated for eight years and the employee had used it for more than 4,000 cycles without incident. Thus, the Second District held that the employer was entitled to summary judgment on the employee's common law intentional tort claim. *Id.* Likewise, in *Gundel v. Whalen Lawn & Landscaping, LLC*, 2022-Ohio-2763, ¶ 36 (5th Dist.), the Fifth District held that there was no evidence that the injury from a mower was substantially certain to occur and awarded summary judgment to the employer where the employee was aware that the kill switch was disabled and used it for an entire mowing season without incident.

37.

**{¶ 88}** Like *Partin* and *Gundel*, in this case Moore had used Mixer 9 in the same manner for over eight years without incident. As such, while Hines may have had some knowledge of risk after being informed by the OSHA inspector of the need to provide a covering for the opening, reasonable minds could only conclude that Hines was unaware that an injury that had not occurred in over eight years of similar operation was a substantial certainty. Therefore, the trial court did not err in awarding summary judgment to Hines on Moore's common law intentional tort claim.

**{¶ 89}** Accordingly, Moore's third assignment of error is not well-taken.

## C. Post-Summary Judgment Proceedings

**{¶ 90}** In his first assignment of error, Moore argues that the trial court abused its discretion when it denied his Civ.R. 60(B)(3) motion for relief from judgment. In his second assignment of error, Moore argues that the trial court erred when it denied his motion for limited discovery.

### 1. Civ.R. 60(B)(3) Motion for Relief from Judgment

**{¶ 91}** To be entitled to relief under Civ.R. 60(B), "the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. "These requirements are

38.

independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton*, 70 Ohio St.3d 172, 174 (1994). An appellate court reviews a trial court's denial of a Civ.R. 60(B) motion for an abuse of discretion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988).

{¶ 92} Here, Moore sought relief under Civ.R. 60(B)(3), which applies in instances of "[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party." "[T]he fraud, misrepresentation, or other misconduct contemplated by Civ.R. 60(B)(3) refers to deceit or other unconscionable conduct committed by a party to obtain a judgment and does not refer to conduct that would have been a defense to or claim in the case itself." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 13. "The fraud or misconduct contemplated by Civ.R. 60(B)(3) is fraud or misconduct on the part of the adverse party in obtaining the judgment by preventing the losing party from fully and fairly presenting his [case]." *PNC Bank, Natl. Assn. v. Botts*, 2012-Ohio-5383, ¶ 15 (10th Dist.), citing *State Alarm, Inc. v. Riley Indus. Servs.*, 2010-Ohio-900, ¶ 21 (8th Dist.); *Wells Fargo Bank, N.A. v. Bluhm*, 2015-Ohio-921, ¶ 25 (6th Dist.). Specifically, Moore argues that ThorWorks and Hines committed fraud when they altered and produced in discovery the injury report form that deleted the phrase "listen to OSHA."

{¶ 93} In its decision, the trial court found that Moore did not establish entitlement to relief under Civ.R. 60(B)(3) for three reasons. First, the conduct of ThorWorks and Hines, while a discovery violation, did not constitute fraud, misrepresentation, or

misconduct. Second, because Moore was in possession of the original form for several months prior to filing the complaint and was in possession of both forms for 10 months before summary judgment motions were filed, he was not prevented from fully and fairly presenting his case. Third, the misconduct on the part of Hines and ThorWorks was not material to obtaining the judgment because the substance of what was deleted—"listen to OSHA"—was fully argued and considered on summary judgment, and because the alteration itself is immaterial to establishing deliberate intent.

{¶ 94} In support of his appeal, Moore cites *Riverview Crossing, Inc. v. Striker-Greiwe*, 2003-Ohio-3823 (1st Dist.), and *Lonsdorf v. Seefeldt*, 47 F.3d 893 (7th Cir. 1995), for the proposition that the alteration of evidence constitutes fraud under Civ.R. 60(B)(3). Those cases, however, are distinguishable.

{¶ 95} In *Riverview Crossing*, the landlord brought an eviction action against Striker-Greiwe. At the trial, Striker-Greiwe produced a copy of the rental agreement showing that she had until the fifteenth of the month to pay her rent. Based upon the rental agreement, the trial court entered judgment in her favor on the eviction claim. *Riverview Crossing* at ¶ 3. Thereafter, the landlord moved for relief from judgment under Civ.R. 60(B)(3), arguing that Striker-Greiwe presented an altered copy of the rental agreement as demonstrated by differences in the font size for the dates when rent was due, whited-out letters, and typing extended beyond the left margin. *Id.* at ¶ 5. On appeal, the First District reversed the trial court's denial of the landlord's Civ.R. 60(B)(3)

motion, holding that the trial court abused its discretion in denying the motion without a hearing. *Id.* at ¶ 11.

{¶ 96} In *Lonsdorf*, the plaintiff filed a claim for sexual harassment against Seefeldt. In discovery and during the trial, Seefeldt produced an altered copy of a training schedule, which he used to show that some of his comments were part of Lonsdorf's training to become a tax enforcement agent. *Lonsdorf* at 896. Following the trial, which resulted in judgment for Seefeldt, Lonsdorf remembered that she had an original copy of the training schedule and noticed the discrepancies. *Id.* She thus moved for relief from judgment under Civ.R. 60(B)(3), which the trial court denied because she had access to the disputed information and failed to discover the alteration in a timely fashion. *Id.* at 897. On appeal, the Seventh Circuit reversed, holding that

> [t]he evidence in the record does not support a finding that Lonsdorf had failed to discover the misrepresentation in a timely fashion, nor does it demonstrate that Lonsdorf is merely attempting to relitigate the case. To the contrary, the record reflects that during discovery many documents were produced, and Lonsdorf had not previously realized that a falsified document existed. * * * A litigant, however, should not be required to assume that falsified documents are being produced by an opposing party.

*Id.* at 898. Importantly, the Seventh Circuit further reasoned that it was "patently obvious that Seefeldt benefited from the use of a fraudulently altered document and Lonsdorf suffered an injustice." *Id.*

41.

{¶ 97} In both *Riverview Crossing* and *Lonsdorf*, the alteration was critical to the party's successful prosecution or defense of the case. Here, in contrast, the deletion of the phrase "listen to OSHA" had no impact on the result because the trial court already accepted for purposes of summary judgment that ThorWorks was knowledgeable about OSHA's directive to guard the opening. Thus, Moore did not suffer any prejudice as a result of ThorWorks alteration of the internal employee injury report form.

{¶ 98} Moore attempts to argue that he did suffer prejudice because the act of altering the form is evidence of ThorWorks' deliberate intent to injure him. However, in this context, the act itself would go to prove Moore's underlying employer intentional tort claim, and therefore is not the type of fraud, misrepresentation, or other misconduct contemplated by Civ.R. 60(B)(3).

{¶ 99} Alternatively, Moore's argument could be stretched to include the position that ThorWork's failure to produce the original form in discovery constituted fraud, misrepresentation, or other misconduct. The trial court, however, found after the hearing that while ThorWorks may have committed a discovery violation, its conduct did not constitute a fraudulent or deliberate act designed to skew truth finding. The record supports this conclusion. Hines testified that he produced all of the responsive forms contained in the human resources file, including the altered injury report form, and was unaware of the existence of a copy of the original injury report form that was separately located in a file cabinet in Finlay's old office. Rather than an attempt to fraudulently

42.

conceal things from Moore, the record suggests that the failure to produce a copy of the original form was an unintentional oversight.

{¶ 100} Accordingly, because Moore has not demonstrated the type of fraud, misrepresentation, or other misconduct contemplated by Civ.R. 60(B)(3), the trial court did not abuse its discretion in denying his motion for relief from judgment.

{¶ 101} Moore's first assignment of error is not well-taken.

### 2. Motion for Limited Discovery

{¶ 102} Relatedly, Moore argues that the trial court abused its discretion when it denied his motion for limited discovery.

{¶ 103} "In discovery practices, the trial court has a discretionary power not a ministerial duty." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592 (1996), quoting *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 57 (1973). "[T]he standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." *Id.* "Although unusual, appellate courts will reverse a discovery order 'when the trial court has erroneously denied or limited discovery.'" *Id.*, quoting 8 Wright, Miller & Marcus, Federal Practice & Procedure (2 Ed.1994) 92, Section 2006. "A trial court ordinarily abuses its discretion by limiting discovery when '[t]he record discloses that further discovery was warranted in order to fully prepare to litigate' the pertinent legal issues." *Teays Valley Local Sch. Dist. Bd. of Edn. v. Struckman*, 2023-Ohio-244, ¶ 35 (4th Dist.), quoting *Mauzy* at 592-593.

43.

{¶ 104} In this case, the trial court concluded that further discovery on the issue of who made the alteration to the employee injury report, when, and why was not warranted. It reasoned that Hines already conducted an internal investigation that was unable to ascertain who altered the document, when it was altered, or why it was altered, and thus it was doubtful that any further discovery would be able to answer those questions. Moreover, the court found that the fact of the alteration was "immaterial and extremely tenuous, at best, to the critical issue" of whether ThorWorks had a deliberate intent to injure Moore.

{¶ 105} Upon review, the trial court's considerations are not unreasonable, arbitrary, or unconscionable. The record demonstrates that the isolated alteration of a single employee injury report to remove the employee's opinion that ThorWorks should have "listen[ed] to OSHA" is of so little consequence to the question of whether ThorWorks deliberately and specifically intended to injure Moore that any future discovery on the circumstances of the alteration would not change the result of the proceedings. Therefore, the trial court did not abuse its discretion when it denied Moore's motion for limited discovery.

{¶ 106} Accordingly, Moore's second assignment of error is not well-taken.

44.

## IV. Conclusion

{¶ 107} For the foregoing reasons, the judgments of the Erie County Court of Common Pleas are affirmed. Pursuant to App.R. 24, Moore is hereby ordered to pay the costs incurred on appeal.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Myron C. Duhart, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

Gene A. Zmuda, J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

**ZMUDA, J.**

{¶ 108} I concur in the majority's judgment affirming the trial court's grant of summary judgment to appellees. I write separately, however, because I believe the majority's decision improperly suggests that this court could consider Hines's argument that he was immune from his co-employee's tort claims pursuant to R.C. 4123.741 despite the fact that Hines did not file a cross-appeal on that issue.

{¶ 109} In his brief, Hines states "[the trial court] erred in not granting summary judgment to Mr. Hines on the basis he was immune from intentional torts, or at a minimum, the deliberate intent standard that applies to employers should be applied." In his conclusion, Hines again argues that "those same laws provide immunity to [him]" and asks this court to affirm the granting of summary judgment in his favor on that basis. I believe that Hines was obligated to file a notice of cross-appeal to properly raise that issue for this court's review.

{¶ 110} A cross-appeal "is a separate attempt by an appellee to enlarge his own rights or lessen the rights of his adversary[.]" *Kaplysh v. Takieddine,* 35 Ohio St.3d 170 (1988). App.R. 3(C)(1) governs when a cross appeal is required. It states:

> Whether or not an appellee intends to defend an order on appeal, *an appellee who seeks to change the order * * * shall file a notice of cross appeal with the clerk of the trial court[.]*

(Emphasis added). Conversely, App.R. 3(C)(2) states:

> A person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but *who does not seek to change the order* is not required to fil a notice of cross-appeal or to raise a cross-assignment of error.

(Emphasis added). Therefore, a party seeking to change the trial court's order is obligated to file a cross-appeal while a party merely arguing alternative grounds in

46.

support of the trial court's judgment is not obligated to file a cross-appeal or to raise a cross-assignment of error.

{¶ 111} In *Kaplysh,* the Ohio Supreme Court held that "without filing a cross-appeal, an appellee can 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon a matter *overlooked or ignored* by it.'" *Id.* at 386 (emphasis added). The alternative grounds an appellee may argue to defend the trial court's judgment, then, must either attack the trial court's reasoning or rely on a matter that the trial court overlooked or ignored. Several courts have utilized this definition of alternate grounds an appellee may advance in support of its defense of a trial court's judgment. *See Bond v. Pandolfi de Rinaldis,* 2018-Ohio-930, ¶ 17 (10th Dist.); *Peters v. Tipton,* 2015-Ohio-2323, ¶ 19 (7th Dist.). I find this definition of what constitutes an alternate ground on which an appellee may defend a judgment without filing a cross-appeal embodies the text of App.R. 3(C) and is dispositive of the concern I have with appellee's argument here.

{¶ 112} As described above, Hines asks this court to review the trial court's finding that he was not immune from a co-employee's tort claim pursuant to R.C. 4123.741. His argument does not attack the trial court's reasoning for granting the summary judgment on the merits in his favor, nor does it identify grounds in support of summary judgment in his favor that the trial court overlooked or ignored. To the contrary, the trial court expressly considered and rejected Hines's immunity argument before finding in his favor on other grounds. For that reason, I find that Hines is not

47.

advancing alternate grounds on which to affirm the trial court's judgment as described in App.R. 3(C)(2), but seeks a substantive change to that judgment—necessitating the filing of a cross-appeal before this court can consider that argument.

{¶ 113} This conclusion is consistent with the requirements of App.R. 3(C) and *Kaplysh*. It cannot be disputed that if this court were to accept Hines's immunity argument and find that he was entitled to immunity under the statute, it would require reversal of the trial court's judgment finding that he was not immune from appellant's tort action. Further, should we reach that conclusion, we would certainly be enlarging Hines's rights to be free from even responding to appellant's tort action while lessening appellant's rights to have his action decided on the merits rather than immunity grounds.

{¶ 114} I note the majority's conclusion that as long as the end result is the same—that is, accepting Hines's immunity argument will still result in summary judgment in his favor—that neither parties' rights are changed. I respectfully disagree with this conclusion. Our reversal of the trial court's immunity decision would moot this court's analysis of the underlying facts of this case applying the common law tort standards pursuant to *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115 (1991). More significantly, any future attempt to appeal this court's decision, then, will be narrowed to the dispositive issue of Hines's immunity from intentional torts. The fact that this court's potential acceptance of Hines's "alternate" grounds would have such a fundamental impact on the manner in which this case could proceed, if at all, is further evidence that

appellant seeks to change the trial court's judgment and was required to file a cross-appeal before this court could consider that argument.

{¶ 115} Put simply, I believe that Hines's assertion that the trial court erred and his request for this court to consider his immunity argument required that he file a cross-appeal pursuant to App.R. 3(C)(1). Because he did not file a cross-appeal, I would expressly state that Hines's argument that the trial court erred in failing to grant him immunity is not properly before this court. I do not join in the majority opinion to the extent it suggests otherwise.

{¶ 116} I concur in the balance of the majority's opinion and its well-reasoned analysis applying the common law tort standards pursuant to *Fyffe*. Therefore, I join the majority in affirming the trial court's granting of summary judgment in Hines's favor.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.